MAYER, Circuit Judge.
 

 James M. Ellett Construction Company, Inc. appeals the judgment of the United States Court of Federal Claims, No. 90-641 C (July 29,1994), dismissing its suit challenging a contracting officer’s final decision for want of subject matter jurisdiction because Ellett had not submitted a “claim” that complied with the requirements of the Contract Disputes Act. Subsequent to the court’s dismissal, this court clarified the definition of a claim, overruling the cases upon which the trial court had relied in dismissing Ellett’s complaint.
 
 Reflectone, Inc. v. Dalton,
 
 60 F.3d 1572 (Fed.Cir.1995) (in banc). Because Ellett submitted both a “claim” as that term is explained in
 
 Reflectone,
 
 and a termination settlement proposal that ripened into a claim which the contracting officer settled by determination, there was jurisdiction. Therefore, we reverse and remand for further proceedings.
 

 
 *920
 

 Background
 

 In July 1988, the Forest Service of the United States Department of Agriculture (agency) awarded Ellett a contract to construct a 2.7 mile logging road in the Siskiyou National Forest, Oregon. The contract contained the April 1984 version of the Federal Acquisition Regulation (FAR) clause authorizing the government to terminate the contract for its convenience, 48 C.F.R. § 52.249-2 (Alternate I), which states, in pertinent part:
 

 (d) After termination, the Contractor shall submit a final termination settlement proposal to the Contracting Officer in the form and with the certification prescribed by the Contracting Officer____
 

 (e) Subject to paragraph (d) above, the Contractor and the Contracting Officer may agree upon the whole or any part of the amount to be paid because of the termination. ...
 

 (f) If the Contractor and the Contracting Officer fail to agree on the whole amount to be paid the Contractor because of the termination of work, the Contracting Officer shall pay the Contractor the amounts determined as follows, but without duplication of any amounts agreed upon under paragraph (e)____
 

 (i) The Contractor shall have the right of appeal, under the Disputes clause, from any determination made by the Contracting Officer under paragraph (d) [or]
 

 (f)____If the Contracting Officer has made a determination of the amount due under paragraph (d) [or] (f) ..., the Government shall pay the Contractor (1) the amount determined by the Contracting Officer ... if no timely appeal has been taken, or (2) the amount finally determined on appeal.
 

 On July 28, 1988, the agency issued Ellett a partial notice to proceed, which authorized the construction of just 4,000 feet of the road, because of pending legislation to limit entry into the area. The agency then terminated the remainder of the contract for convenience on September 30,1988.
 

 By letter dated November 17, 1988, the stated purpose of which was “to file formal notice of claim pursuant to the Contract Disputes Act of 1978 [ (CDA) ],” Ellett sought to recover $545,157.19 from the agency. Specifically, the company claimed: (1) a $136,964.81 equitable adjustment for government-ordered changes; (2) $32,036.50 for “unforeseen and unexpected security costs” that were “not disclosed in the prospectus”; and (3) $376,155.88 in lost profits. Although not submitted on the forms the FAR requires for settlement proposals,
 
 see
 
 48 C.F.R. § 49.206-1(e) (1995) (“Settlement proposals must be on the forms prescribed in 49.602____”), Ellett says this letter, like a termination settlement proposal, was intended to recover all money due under the contract. The contracting officer responded by letter of December 2, 1988, that FAR Part 49 governs “the settlement of termination proposals and requests for contract modification.” The letter said Ellett needed to submit a settlement proposal on Standard Forms (SF) 1436 (Settlement Proposal (Total Cost Basis)) and 1439 (Schedule of Accounting Information), which were enclosed.
 

 On March 3, 1989, Ellett submitted a settlement proposal on the required forms, requesting a net payment of $494,826. It admits that the amount sought in this request was largely duplicative of its November 17, 1988 submission, although different in some respects because of the requirements of the forms and unspecified intervening events. The parties then began to negotiate a mutually agreeable settlement.
 

 In a January 12, 1990 letter to the contracting officer, Ellett observed that it had been “nearly 14 months” since the November 17,1988 CDA “claim” and one year since the settlement proposal. Consequently, it said that unless the “outstanding claim” were resolved satisfactorily within thirty days, it would file suit in the United States Court of Federal Claims.
 
 [1]
 
 The agency responded with a settlement offer of $120,649, which Ellett rejected in a March 31, 1990 letter,
 
 *921
 
 which also said that unless the agency agreed to a settlement of $250,000 within two weeks, it would file suit.
 

 The government rejected the $250,000 settlement offer, and the contracting officer prepared a document styled “Contracting Officer’s Findings and Determination,” dated June 25, 1990. There he evaluated the termination settlement proposal and concluded that Ellett was entitled to termination costs of $416,144.01, less progress payments the agency had already made, for a net of $22,-779.01.
 

 On July 13,1990, Ellett filed a complaint in the Court of Federal Claims, seeking $451,-084 plus interest, costs, and attorneys fees. The government moved to dismiss for lack of subject matter jurisdiction because the November 17, 1988 letter did not qualify as a valid claim under the CDA, and even if it were a valid claim, it was not properly certified. The court agreed that the letter was not properly certified and dismissed the suit.
 
 James M. Ellett Constr. Co. v. United States,
 
 No. 90-641 C (Cl.Ct. Feb. 6, 1991). We reversed.
 
 James M. Ellett Constr. Co. v. United States,
 
 No. 91-5071, 1992 WL 82447 (Fed.Cir. Apr. 24, 1992).
 

 On remand, the government renewed its motion to dismiss, arguing that Ellett had not yet submitted a claim to the contracting officer for purposes of the CDA. In granting the motion, the court said Ellett had to establish that “(1) [it] asserted in writing and with sufficient specificity a right to additional compensation, (2) the government disputed that right, and (3) [it] communicated [its] desire for a contracting officer decision.” Slip op. at 10 (citing
 
 Heyl & Patterson, Inc. v. O’Keefe,
 
 986 F.2d 480 (Fed.Cir.1993);
 
 Transamerica Ins. Corp. v. United States,
 
 973 F.2d 1572 (Fed.Cir.1992)). It also relied on
 
 Santa Fe Engineers, Inc. v. Garrett,
 
 991 F.2d 1579 (Fed.Cir.1993);
 
 Dawco Construction, Inc. v. United States,
 
 930 F.2d 872 (Fed.Cir.1991); and
 
 Mayfair Construction Co. v. United States,
 
 841 F.2d 1576 (Fed.Cir. 1988), for the proposition that there must be a preexisting dispute for a submission to be a claim.
 
 [2]
 
 The court held that because there was not an existing dispute on November 17, 1988, Ellett’s letter of that date was not a “claim”; it was a “unilateral cost
 
 (i.e.
 
 settlement) proposal.” Slip op. at 11. The court also said that the November 17, 1988 letter did not request a final determination by the contracting officer, but was only an invitation to enter negotiations. It concluded that El-lett’s March 3, 1989 termination settlement proposal was not a claim because it did not seek a final decision from the contracting officer. This appeal followed.
 

 Discussion
 

 Both parties agree that all pertinent facts are in the record and are not disputed; thus, the issue of whether Ellett’s submissions constitute “claims” is ripe for review. Jurisdiction is a question of law which we review
 
 de novo. Reflectone,
 
 60 F.3d at 1575.
 

 The United States “is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court’s jurisdiction to entertain the suit.”
 
 United States v. Sherwood,
 
 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941) (citations omitted);
 
 see also Hercules Inc. v. United States,
 
 — U.S. —, —, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996);
 
 Central Ark. Maintenance, Inc. v. United States,
 
 68 F.3d 1338, 1341 (Fed.Cir. 1995) (federal courts, with the exception of the Supreme Court, have “jurisdictional reach only so far as Congress allows”). The Court of Federal Claims has jurisdiction “ ‘only of those [claims] which by the terms of some act of Congress are committed to it.’ ”
 
 Hercules,
 
 — U.S. at —, 116 S.Ct. at 985 (quoting
 
 Thurston v. United States,
 
 232 U.S. 469, 476, 34 S.Ct. 394, 395, 58 L.Ed. 688 (1914)).
 

 The CDA grants the court jurisdiction over actions brought on claims within twelve months of a contracting officer’s final decision. 41 U.S.C. § 609(a) (1994). Thus, for the court to have jurisdiction under the CDA, there must be both a valid claim, a
 
 *922
 
 term the act leaves undefined, and a contracting officer’s final decision on that claim.
 
 [3]
 

 See Reflectone,
 
 60 F.3d at 1575;
 
 Sharman Co. v. United States,
 
 2 F.3d 1564, 1568-69 (Fed.Cir.1993). Consequently, the controlling question here is whether Ellett submitted a proper claim upon which the contracting officer has issued a decision. Our answer is based on the FAR definition of a claim, the contract language, and the facts of the case.
 
 Reflectone,
 
 60 F.3d at 1575.
 

 Ellett argues first that its November 17, 1988 submission was a valid, nonroutine claim, which did not require a preexisting dispute. It also asserts that the contract and the FAR permitted it to appeal the contracting officer’s determination on its termination settlement proposal. Because the contract required it to submit a termination settlement proposal on the forms prescribed by the FAR, we address Ellett’s second argument first.
 

 A. The Termination Settlement Proposal
 

 Ellett does not contend that its March 1989 settlement proposal was a CDA claim. Rather, it argues simply that once the contracting officer reviewed the proposal and unilaterally determined that it was due a net termination settlement of $22,779.01, it was entitled, under the terms of its contract and the FAR, to appeal that determination directly to the court.
 

 This argument is not enough, however, for us to conclude that the court had jurisdiction. Neither the parties nor the regulation writers can confer jurisdiction on the Court of Federal Claims.
 
 Cf. Beck v. Alabama,
 
 447 U.S. 625, 631 n. 6, 100 S.Ct. 2382 n. 6, 2386, 65 L.Ed.2d 392 (1980);
 
 Kraft, Inc. v. United States,
 
 85 F.3d 602, 604 (Fed.Cir. 1996). Congress granted the court jurisdiction only over an appeal from a contracting officer’s decision on a valid claim.
 
 Reflectone,
 
 60 F.3d at 1575;
 
 Sharman, 2
 
 F.3d at 1568-69.
 

 Under the FAR, there are three requirements a nonroutine submission must meet to be a “claim.” It must be: (1) a written demand or assertion, (2) seeking as a matter of right, (3) the payment of money in a sum certain. 48 C.F.R. § 33.201 (1995);
 
 Reflectone,
 
 60 F.3d at 1575. Ellett’s contract required nothing more. A routine request for payment, on the other hand, must also be “in dispute” when submitted to meet the definition of a “claim.” 48 C.F.R. § 33.201;
 
 Reflectone,
 
 60 F.3d at 1576.
 

 Our threshold inquiry, therefore, is whether Ellett’s termination settlement proposal was a routine submission.
 
 See Reflectone,
 
 60 F.3d at 1577 (“[T]he critical distinction in identifying a ‘claim’ is ... between routine and non-routine submissions.”). In that regard, a “demand for compensation for unforeseen or unintended circumstances cannot be characterized as ‘routine.’ ”
 
 Id.
 
 (request for an equitable adjustment is “anything but a ‘routine request for payment’ ”). On the other hand, vouchers, invoices, and similar requests for payment are “submitted for work done or equipment delivered by the contractor in accordance with the expected or scheduled progression of contract performance.”
 
 Id.
 

 Using these beacons as guides, it is difficult to conceive of a less routine demand for payment than one which is submitted when the government terminates a contract for its convenience. Such a demand, which occurs only in a fraction of government contracts is certainly less routine than a request for an equitable adjustment, several of which a contractor might submit on any one contract. Indeed, in concluding that a request for an equitable adjustment is not routine in
 
 Reflec-tone,
 
 we pointed to Supreme Court precedent equating a request for an equitable adjustment with an assertion of a breach of contract. That analogue is even more appropriate here, where, but for the convenience termination clause, the government’s action would be a breach of contract, and it would be liable for resulting damages.
 
 See G.L. Christian and Assocs. v. United States,
 
 160 Ct.Cl. 1, 312 F.2d 418, 423 (1963). A request for payment submitted after the government
 
 *923
 
 has terminated the contract during its performance is a far cry from a request submitted in accordance with the expected or scheduled progression of contract performance.
 

 It is beyond serious dispute that the parties intended that Ellett construct the entire 2.7 mile logging road. Because of the unforeseen legislation, however, the government decided to invoke its right to terminate the contract. Ellett’s demand for compensation arising from such circumstances can hardly be considered routine. If it were routine, like a voucher or invoice, there would be no need to negotiate. However, the FAR contemplates that only after the amount a contractor is owed because of a convenience termination is determined, whether by agreement, determination, or appeal, shall a contractor submit a voucher or invoice for that amount. 48 C.F.R. § 49.112-2(a)-(b) (1995).
 

 Relying on a dictionary, the government argues that a termination settlement proposal is a routine request for payment because the FAR and the contract establish procedures for submitting one. The government is correct that “routine” may be defined as “[i]n accordance with established procedure.” The American Heritage Dictionary 1074 (2d ed. 1982). But, it is also defined as “habitual; regular,” and “[n]ot special; ordinary,” id, as well as “of a commonplace or repetitious character,” Webster’s New Collegiate Dictionary 1001 (150th anniversary ed. 1981). Once the government terminates for convenience, the procedures used to determine a contractor’s recovery could be perceived as routine, in the sense that the same ones are followed each time. However, that does not make them routine in the overall scheme of the contract and the parties’ expectations.
 

 The government also points to our statement in
 
 Reflectone
 
 that a “routine request for payment ... is made under the contract, not outside it,” 60 F.3d at 1577, in arguing that Ellett’s termination settlement proposal is routine because it is a request for payment made pursuant to the convenience termination clause. That statement follows our description of nonroutine requests as those seeking compensation because of unforeseen or unintended circumstances, in contrast to routine submissions, which are made “under the contract” because they are made “in accordance with the expected or scheduled progression of contract performance.”
 
 Id.
 
 The government’s interpretation falls of its own weight, however, because in
 
 Reflectone
 
 itself, the claim was submitted pursuant to the Changes clause of the contract for additional costs incurred in part from government-caused delays.
 
 See Reflectone, Inc.,
 
 ASBCA No. 43081, 93-1 BCA ¶ 25,512 at 127,054, 1992 WL 302847 (1992);
 
 see also
 
 48 C.F.R. § 52.243-1 (1995) (“Changes-Fixed Price” clause). So, as a written assertion seeking, as a matter of right under the termination for convenience clause, the payment of $451,-084 plus interest, costs, and attorneys fees, it met the FAR’s requirements of a valid claim.
 

 As we said in
 
 Reflectone,
 
 however, not every nonroutine submission constitutes a CDA claim.
 
 See
 
 60 F.3d at 1577 n. 7. Besides meeting the FAR definition of a claim, the CDA also requires that all claims be submitted to the contracting officer for a decision.
 
 [4]
 
 41 U.S.C. § 605(a) (1994);
 
 see also
 
 48 C.F.R. § 33.206;
 
 Bill Strong Enters., Inc. v. Shannon,
 
 49 F.3d 1541, 1550 (Fed.Cir. 1995) (submission “cannot be considered a formal CDA claim since [it] did not request a final decision of the CO”),
 
 overruled in part on other grounds by Reflectone,
 
 60 F.3d at 1579 n. 10. This does not require an explicit request for a final decision; “as long as what the contractor desires by its submissions is a final decision, that prong of the CDA claim test is met.”
 
 Transamerica,
 
 973 F.2d at 1576. Thus, “a request for a final decision can be implied from the context of the submission.”
 
 Heyl & Patterson,
 
 986 F.2d at 483.
 

 When a contractor submits a termination settlement proposal, it is for the purpose of negotiation, not for a contracting officer’s decision. A settlement proposal is
 
 *924
 
 just that: a proposal.
 
 See
 
 48 C.F.R. § 49.001 (1995) (“a proposal for effecting settlement of a contract terminated in whole or in part, submitted by a contractor or subcontractor in the form, and supported by the data, required by this part”). Indeed, it is a proposal that Ellett contractually agreed to submit in the event of a convenience termination. The parties agreed that they would try to reach a mutually agreeable settlement. If they were unable to do so, however, it was agreed, consonant with the FAR’s requirements, that the contracting officer would issue a final decision,
 
 see id.
 
 §§ 52.249-2(f) (Alternate I), 49.103, 49.105(a)(4), which El-lett could appeal to the court or to the Department of Agriculture Board of Contract Appeals,
 
 id.
 
 § 52.249-2(i). Consequently, while Ellett’s termination settlement proposal met the FAR’s definition of a claim, at the time of submission it was not a claim because it was not submitted to the contracting officer for a decision.
 

 Once negotiations reached an impasse, the proposal, by the terms of the FAR and the contract, was submitted for decision; it became a claim. In other words, in accordance with the contract’s prescribed method of compensating Ellett for a convenience termination, a request that the contracting officer issue a decision in the event the parties were unable to agree on a settlement was implicit in Ellett’s proposal. After ten months of fruitless negotiations, Ellett explicitly requested that the contracting officer settle its claim. This demand is tantamount to an express request for a contracting officer’s decision. Hence, after the subsequent exchange of offers and counteroffers, the contracting officer settled Ellett’s proposal by determination and Ellett filed suit.
 

 That the termination settlement proposal would ripen into a claim requiring the contracting officer to issue a unilateral settlement determination was contemplated by the contract and the FAR. They provide explicitly that Ellett had the right to appeal the contracting officer’s decision on its proposal. 48 C.F.R. § 52.249-2(i);
 
 see also id.
 
 § 49.109-7(d) (a contracting officer’s settlement determination “shall advise the contractor that the determination is a final decision from which the contractor may appeal under the Disputes clause”). The FAR implicitly includes termination settlement proposals within the operative definition of a claim to the extent they are not favorably resolved by a contracting officer’s decision.
 
 [5]
 

 The government responds that Ellett’s termination settlement proposal was not an appealable claim for three reasons: (1) once negotiations reached an impasse, Ellett was required to submit a new claim or convert its termination settlement proposal into a claim, detailing what issues were in dispute, an act it failed to perform; (2) because the FAR prohibits the payment of interest on a settlement agreement or a settlement by determination, a settlement proposal cannot be a CDA claim; and (3) Ellett’s certification was defective because it had to be but was not made after the parties’ negotiations stalled.
 

 On the first argument, after negotiations reached an impasse, the contracting officer issued a unilateral decision on the settlement proposal pursuant to paragraph (f) of the termination for convenience clause. 48 C.F.R. § 52.249-2® (Alternate I);
 
 see also id.
 
 § 49.109-7 (governing settlements by determination). Ellett points out that under section (i) of that clause, “[t]he contractor shall have the right of appeal, under the Disputes clause, from any determination made by the Contracting Officer under paragraph (d) [or] (f)____”
 
 Id.
 
 § 52.249-2(i).
 

 The right of appeal in the Disputes clause provides that “[t]he Contracting Officer’s decision [on a claim] shall be final unless the Contractor appeals or files a suit as provided in the Act.”
 
 Id.
 
 § 52.233-1®. Under “the Act,” a contractor may appeal a contracting
 
 *925
 
 officer’s final decision to the appropriate agency board of contract appeals, 41 U.S.C. §§ 606-607 (1994), or to the Court of Federal Claims,
 
 id.
 
 § 609(a)(1). Indeed, the FAR grants contractors a right to appeal “from” a contracting officer’s determination on a settlement proposal. 48 C.F.R. § 52.249-2(i). It does not speak of appealing that decision back “to” the contracting officer by submitting a new claim, a futile act.
 
 Cf. Reflectone,
 
 60 F.3d at 1580-83 (requiring a contractor to resubmit a demand for payment after a contracting officer has denied it is “inimical to two goals of the CDA: providing for the efficient and fair resolution of contract claims”).
 

 Nor is there a requirement that the settlement proposal be converted into a claim. To the contrary, the FAR envisions a direct appeal of the contracting officer’s determination. In the cover letter the contracting officer identified the settlement determination as the “final decision of the Contracting Officer,” and provided the notice of appeal rights required by the FAR to be included in a contracting officer’s final decision on a claim. 48 C.F.R. § 33.211(a)(4)(v) (1995). As further evidence of Ellett’s appeal rights, 48 C.F.R. § 49.109-7(g) (“Decision on the contractor’s
 
 appeal”
 
 (emphasis added)) instructs the contracting officer to “give effect to a decision of the [Court of Federal Claims] or a board of contract appeals, when necessary, by an appropriate modification to the contract.”
 

 There is no merit in the government’s second argument that because the FAR specifically prohibits the payment of interest on amounts due under a settlement agreement or a settlement determination,
 
 see id.
 
 § 49.112-2(d), a settlement proposal cannot be a claim because the CDA grants contractors interest on claims.
 
 See
 
 41 U.S.C. § 611 (1994). Aside from the circularity of this reasoning, generally no interest may be awarded on a claim against the United States absent an express contractual provision or act of Congress specifically providing for the payment of interest.
 
 Fidelity Constr. Co. v. United States,
 
 700 F.2d 1379, 1383 (Fed.Cir. 1983). In light of this, section 49.112-2(d) would be unnecessary unless a termination settlement proposal were a claim under which the contractor otherwise would be entitled to CDA interest. Thus, a termination settlement proposal can be a CDA claim, albeit one the regulation writers treat disparately for interest purposes.
 

 The government’s final argument, that because the termination settlement proposal was not properly certified, the court lacked jurisdiction, is also unavailing. It does not argue that the substance of the preprinted certification contained on the SF 1436 was in any way deficient. Indeed, it concedes that the “certification Ellett submitted with its settlement proposal contained similar language” to that of the CDA.
 
 Compare
 
 48 C.F.R. § 53.301-1436
 
 with
 
 41 U.S.C. § 605(e)(1). Rather, the government says that “Ellett certified its settlement proposal before any dispute existed.” It relies on
 
 Santa Fe Engineers
 
 to argue that once the negotiations reached an impasse, Ellett was obligated to submit a new certification.
 

 We part ways with the government at its predicate: that a proper certification of the settlement proposal was a jurisdictional prerequisite. We agree that the termination settlement proposal must be certified in accordance with the CDA. Moreover, the government correctly states that at the time Ellett filed its complaint in this case, certification in accordance with the CDA was jurisdictional.
 
 See United States v. Grumman Aerospace Corp.,
 
 927 F.2d 575, 579 (Fed.Cir. 1991). However, the Federal Courts Administration Act of 1992, Pub.L. No. 102-572, § 907(a)(1), 106 Stat. 4506, 4518 (1992), amended the CDA to provide that “[a] defect in the certification of a claim shall not deprive a court or an agency board of contract appeals of jurisdiction over that claim”; the defective certification must be corrected pri- or to entry of final judgment or decision.
 
 See
 
 41 U.S.C. § 605(e)(6) (1994). This amendment is applicable to all claims filed before October 29, 1992, “except for those claims which, before [that date], have been the subject of ... a suit in the United States Claims Court.” Pub.L. No. 102-572, § 907(a)(2), 106 Stat. at 4518.
 

 It is true that Ellett filed suit in the Court of Federal Claims prior to October 29, 1992,
 
 *926
 
 but the sole subject of the action then was its November 17, 1988 purported claim. The issue was whether that letter, which Ellett argues was a claim submitted separately and independently of its settlement proposal,
 
 see infra,
 
 constituted a valid claim and was properly certified. It was not until after we remanded the case and proceedings resumed that Ellett’s termination settlement proposal became a subject of the suit. Consequently, because it was not until sometime after October 29th that Ellett’s March 3, 1989 termination settlement proposal was put before the court, certification of the proposal was not a jurisdictional prerequisite.
 

 The government recognizes that in
 
 Reflec-tone
 
 we overruled
 
 Santa Fe Engineers
 
 to the extent that it required a preexisting dispute for a nonroutine request for payment to constitute a CDA claim. Nevertheless, it argues that case is still good law “to the extent that it held that ... when there is a routine request for payment ... the claim must be certified after the dispute arises.” Of course, we have already held that a termination settlement proposal is a nonroutine request for payment, so this argument also fails. There was jurisdiction.
 

 B. The November 17, 1988 Submission
 

 Ellett also argues that it was entitled to submit its November 17, 1988 “claim” independently of its termination settlement proposal. If this is correct, then it would be entitled to extra interest under the CDA. 41 U.S.C. § 611.
 

 We need not strain to conclude that the November 17,1988 submission, which we have already held was properly certified, met the requirements of a valid, nonroutine claim under
 
 Reflectone.
 

 [6]
 

 The claim included requests for equitable adjustments for government-ordered changes in the work performed and for a constructive change because of the government’s failure to disclose its superior knowledge.
 
 See Petrochem Servs., Inc. v. United States,
 
 837 F.2d 1076, 1078-79 (Fed. Cir.1988). Requests for an equitable adjust ment submitted in response to contract changes, like these, are precisely the type of claims we held were nonroutine in
 
 Reflectone.
 
 It is without question a written demand pursuant to the CDA; it seeks a sum certain of $545,157.19; and it does so as a matter of right under the Changes clause of the contract.
 

 We disagree that Ellett’s submission, which was identified as a claim under the CDA, failed because it closed with the remark that Ellett would be happy to meet with the government to discuss the adjustment of the claim. In the context of the letter, that statement relied upon by the court to hold that Ellett did not request a contracting officer’s final decision is nothing more than a cordial closing and does not compromise the letter’s status as a claim. The law does not require an explicit demand or request for a contracting officer’s decision; “as long as what the contractor desires by its submissions is a final decision, that prong of the CDA claim test is met.”
 
 Transamerica,
 
 973 F.2d at 1576. Ellett’s claim, read as a whole, was submitted for the purpose of obtaining a contracting officer’s decision, a request for which was implicit. In the context of a termination for convenience, however, the question is whether Ellett was permitted to submit a claim independently of its termination settlement proposal.
 

 The government argues that when it terminates a contract for convenience, all claims a contractor might have, including equitable adjustments, are subsumed within the termination settlement proposal. Ellett, on the other hand, argues that there is no authority in the CDA or the FAR “for simply eliminating valid contractor claims by terminating the contract.” We agree with Ellett.
 

 In support of its contention that any claims a contractor might have are subsumed within the termination settlement proposal, the government relies principally on
 
 Nolan Brothers, Inc. v. United States,
 
 186 Ct.Cl. 602, 405 F.2d 1250 (1969). There the government terminated a contract for its convenience, and the contractor submitted a termination
 
 *927
 
 settlement proposal. The government settled that proposal by determination, just as it did here. In addition, the contractor raised a breach of contract count for defective specifications. The court held that “all the plaintiff is now entitled to is a proper award under the convenience-termination article ... and a separate claim [for breach of contract] no longer exists.”
 
 [7]
 

 Id.,
 
 405 F.2d at 1253. It explained that under the termination for convenience clause, the contractor is reimbursed for all of its costs and profit on those costs, unless it would have sustained a loss. There is “little substantial difference in the calculation of actual costs whether the case be governed by the convenience-termination article, an ‘equitable adjustment’ under some other contract clause, or the common law [breach of contract] standard.”
 
 Id.,
 
 405 F.2d at 1254 n. 3. The only significant difference, the court reasoned, is that the contractor is entitled to anticipated but unearned profits under a breach of contract theory but not under the termination for convenience clause. Therefore, the only reason for the breach count was to obtain unearned profits to which it was not entitled. Hence, it was disallowed.
 

 Nolan Brothers
 
 does not control for one simple, yet critical, reason. It was decided before the CDA, which granted contractors the right to recover interest on their claims. Before then, with one exception not here pertinent, “there was no statutory provision for interest on government contract claims.”
 
 Brookfield Constr. Co. v. United States,
 
 228 Ct.Cl. 551, 661 F.2d 159, 163 n. 7 (1981). Therefore, the analytical underpinnings of the court’s reasoning, that the amount of recovery is basically the same whether under the termination clause, an equitable adjustment, or the common law (save for anticipatory profits), does not apply post-CDA. The reason, of course, is that a contractor is entitled to interest on a valid equitable adjustment claim, while under the regulations, no interest is allowed on termination settlement proposals.
 

 It does not stand to reason that the government can avoid a statutory right to interest on a claim by simply terminating the contract for convenience. We do not suggest that contracting officers would intentionally do so; we presume they perform their duties in good faith, and in accordance with the law and governing regulations.
 
 See Alaska Airlines, Inc. v. Johnson,
 
 8 F.3d 791, 795 (Fed. Cir.1993). Nevertheless, we cannot endorse a scheme that would circumvent Congress’s stated desire to grant contractors interest on valid, properly certified claims. Indeed, in enacting section 12 of the CDA, 41 U.S.C. § 611, it “recognized that the cost of money necessary to finance additional or disputed work while pursuing an administrative remedy (often referred to as interest) was a legitimate cost for which the contractor should be compensated.”
 
 Brookfield Constr.,
 
 661 F.2d at 170;
 
 see also Fidelity Constr.,
 
 700 F.2d at 1384. That is true regardless of whether the government terminates the contract.
 

 Our conclusion is buttressed by the FAR. If a contract is completely terminated, the termination contracting officer is required to settle all “related unsettled contract changes” as part of the final settlement. 48 C.F.R. § 49.114(a) (1995). An unsettled contract change is “any contract change or contract term for which a definitive modification is required but has not been executed.”
 
 Id.
 
 § 49.001. On the other hand, if “a part, but not all, of the work that has not been completed and accepted under a contract” is terminated,
 
 id.
 
 § 49.001, the prime contractor must perform the continued portion of the contract and promptly submit any request for an equitable adjustment of price for that portion.
 
 Id.
 
 § 49.104(d). The contracting officer is required to address these claims unless that responsibility is delegated to the termination contracting officer.
 
 Id.
 
 § 49.114(b);
 
 see also id.
 
 § 49.208(b) (requir
 
 *928
 
 ing termination contracting officers to ensure that no portion of costs included in an equitable adjustment made after partial termination are included in the termination settlement).
 

 It is unclear from our record whether ail of the work Ellett had completed at the time of termination had been accepted. Thus, we are unable to determine whether the termination was partial or complete. Regardless, the regulations anticipate the submission of claims independently of the termination settlement proposal.
 

 Therefore, Ellett was entitled to submit a claim for the increased costs it incurred due to contract changes the government made on the work it performed, notwithstanding its termination settlement proposal. It submitted a claim for such costs, which was either constructively denied in the contracting officer’s settlement determination or deemed denied because the contracting officer did not directly address the merits. Either way, the trial court had jurisdiction.
 

 Conclusion
 

 Accordingly, the judgment of the United States Court of Federal Claims is reversed, and the ease is remanded for further proceedings consistent with this opinion.
 

 COSTS
 

 James M. Ellett Construction Company, Inc. shall have its costs.
 

 REVERSED AND REMANDED
 

 [1]
 

 . The United States Claims Court was renamed the United States Court of Federal Claims, effective October 29, 1992.
 
 See
 
 Federal Courts Administration Act of 1992, Pub.L. No. 102-572, § 902, 106 Stat. 4506, 4516 (1992). For simplicity, we refer to it by its current name.
 

 [2]
 

 . Of course, all of these cases were overruled in pertinent part by
 
 Reflectone, Inc. v. Dalton,
 
 60 F.3d 1572 (Fed.Cir. 1995) (in banc),
 

 [3]
 

 . Of course, if the contracting. officer fails to issue a decision on a claim within the prescribed period, the claim is deemed denied, and a contractor may then file an appeal to a board or a suit in the Court of Federal Claims. 41 U.S.C. § 605(c)(5) (1994).
 

 [4]
 

 . Ellett contends that a valid claim does not require a request for a final decision in light of
 
 Reflectone 's
 
 holding that a claim need only meet the prescribed three-part test. Not so; the requirement that a claim be submitted to a contracting officer for a decision is statutory and was met by the contractor in that case.
 
 See
 
 60 F.3d at 1578.
 

 [5]
 

 .
 
 Mayfair Construction Co.
 
 v.
 
 United States,
 
 841 F.2d 1576 (Fed.Cir.1988), held that a termination settlement proposal did not constitute a claim under the CDA. There, however, the definition of "claim” that was included in the contract was based on an interim regulation, which required the payment request to be “in dispute” prior to submission. 841 F.2d at 1577-78;
 
 see also Re-flectone,
 
 60 F.3d at 1579. There was no dispute there, hence no claim as defined. Here, however, we are not constrained by that definition of claim. There is no dispute requirement under the definition of “claim” in the current FAR and in Ellett’s contract.
 

 [6]
 

 . However, we express no opinion on the merits of this claim or which components of it are properly submitted separately from the setdement proposal, a task we leave in the first instance to the trial court.
 

 [7]
 

 . The merger doctrine that has developed in the boards of contract appeals stands for the same principle.
 
 See, e.g., Worsham Constr. Co.,
 
 ASBCA No. 25907, 85-2 BCA ¶ 18,016 at 90,369, 1985 WL 16693 (1985) (“Equitable adjustment claims normally are ‘merged' into the pricing provisions of the termination for convenience clause.").
 
 But see Stradedile!Aegis Joint Venture,
 
 ASBCA No. 39318, 95-1 BCA ¶ 27,397 at 136,589, 1994 WL 720085 (1994) (that claims are "merged” into the pricing provisions of the termination for convenience clause “does not mean that a claim is necessarily extinguished”).