ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| PHA-JMR JV ) | ASBCA No. 59032 |
| ) | |
| Under Contract No. FA4686-10-C-0018 ) | |

APPEARANCES FOR THE APPELLANT:    Martin R. Salzman, Esq.
    Kevin S. Dale, Esq.
    David M. Gersh, Esq.
      Hendrick Phillips Salzman & Flatt, P.C.
      Atlanta, GA

APPEARANCES FOR THE GOVERNMENT:    Col Robert J. Preston II, USAF
      Acting Air Force Chief Trial Attorney
    Christopher M. McNulty, Esq.
    Capt Eric J. Singley, USAF
    Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE JAMES
## ON JURISDICTION

On 25 February 2014, the Board, *sua sponte*, asked the parties to brief the question whether the 30 April 2013 Contract Disputes Act (CDA) certification signed by Scott Manning, treasurer of subcontractor Progressive Roofing as "Attorney-in-fact for JMR," one of the PHA-JMR joint venturers, by a limited power of attorney that expired on 31 January 2013, was a valid CDA certification. Both parties submitted briefs. At the parties' request, the Board also heard oral argument. Upon review of the parties' briefs, attached exhibits and the transcript of the oral argument, we refocus the question as follows: whether either appellant's 25 January 2013 claim or 30 April 2013 claim is within the CDA jurisdiction of this Board.

## STATEMENT OF FACTS (SOF)

1. On 11 August 2010, the U.S. Air Force 9th Contracting Squadron entered into Contract No. FA4686-10-C-0018 (the contract) with PHA-JMR JV to construct roof sections A and B for Building No. 1086 at Beale Air Force Base, California (R4, tab 1 at 1-3).

2. For PHA-JMR JV, "PHILIP L. HAWKINS, MANAGING PARTNER" signed the contract and its bilateral Modification Nos. P00002, P00003 and P00004 (R4, tabs 1, 3-5).

3. "JMR" subcontracted with Progressive Services, Inc. (Progressive) for a portion of the contract roofing work, including demolition (Salzman aff., ex. 1 at 1). As our following Statement of Facts demonstrate, there are many confusing aspects of this appeal. We place "JMR" in quotes for the following reasons, and note that neither the Progressive subcontract nor the Joint Venture agreement is in evidence. The "JMR" citation is to appellant's undated initial "claim" letter (*see* SOF ¶ 8). The "claim" is on the subcontractor's letterhead and is signed by the subcontractor's treasurer. While it is denominated as PHA-JMR JV's claim, the body of the letter stated: "Please accept the letter as PHA-JMR's ('JMR') certified claim submission and request for a final Contracting Officer's decision on behalf of its subcontractor, Progressive Services, Inc. d/b/a Progressive Roofing." It is unclear in the record what appellant intended by its parenthetical ("JMR") in this sentence. In various documents sometimes PHA-JMR JV is used to refer to the contractor and appellant in this appeal, and sometimes JMR is used. Of course, JMR is only one of the JV partners and not the contractor itself.

4. On 1 November 2010, during the initial roof demolition, Progressive's "Roof Warrior" cutting device struck several metal plates atop the concrete deck underlying the existing roofing. Progressive notified the government of this discovery on the next day. (Salzman aff., ex. 1 at 2, exs. 1A, 1B)

5. PHA-JMR JV's Request for Information 003 (RFI #3) dated 10 November 2010 was authored by John Morrill of JMR, who provided further information to the government regarding the alleged differing site condition (Salzman aff., ex. 1E).

6. On 3 June 2011 Progressive sent JMR a $57,210.00 change request consisting of $51,080 for labor and $6,130 for "Overhead & Profit @ 12%" relating to the metal plates (supp. R4, tab 10 at 4 of 9).

7. The 16 June 2011 letter of JMR's John Morrill to contracting officer (CO) Pank, on PHA-JMR JV letterhead, forwarded Progressive's 3 June $57,210.00 request, to which was added "M/U $8,582.00" ("Profit overhead =@ 15%") and "Bond $1,144.00" for a total of $66,936.00 (supp. R4, tab 10 at 2-3 of 9).

8. The undated letter to CO Pank on the letterhead of Progressive Roofing, signed by Scott Manning, submitted a $240,767 equitable adjustment for "Unforeseen Site Conditions," for the metal plates, and requested a CO's final decision. The $240,767 adjustment included the $66,936 requested by Progressive and JMR on 16 June 2011 and added "extended overhead in the sum of *at least* $173,831.00 for which JMR/Progressive is entitled to be reimbursed" (emphasis added). (Salzman aff., ex. 1 at 1-2) We find that PHA-JMR JV or JMR added "$8,582.00" (for profit and overhead at 15%), "Bond $1,144.00" and "$173,831.00" in extended overhead costs, to Progressive's $57,210 claim that included $6,130 for "Overhead & Profit @ 12%."

2

9. Accompanying Progressive's letter were two documents each entitled "CONTRACTOR'S CERTIFICATION." The first was on plain bond, whose text complied with FAR 33.207(c) and was signed by "Scott Manning, Attorney-in-fact for JMR." The second was on Progressive letterhead, signed by "Scott Manning, Treasurer," its text was the same as the other certification. (Salzman aff., ex. 1 at 1, 5-7) Mr. Salzman mailed the foregoing "written certified claim...to the [CO] on behalf of Appellant on or about January 25, 2013" (Salzman aff. at 1).

10. On 13 March 2013 CO Sandra Siiberg rejected the claim because it did not appear to originate from the prime contractor, PHA-JMR JV, but was presented on a subcontractor's letterhead, and the claim certifier "is variously represented as either the apparent claim author...designated attorney for a partial component (JMR) of the prime contractor PHA-JMR JV (with no firm letterhead representation), or, a principal (treasurer) of the...subcontractor" (Salzman aff., ex. 2).

11. The 30 April 2013 letter of "PHA-JMR JV ('JMR')" to CO Siiberg repeated the statements and included the "CONTRACTOR'S CERTIFICATION" signed by "Scott Manning, Attorney-in-fact for JMR" in its January 2013 claim letter, and appended the following:

## LIMITED POWER OF ATTORNEY

### KNOW ALL MEN BY THESE PRESENTS:

> JMR Construction Corp....pursuant to a separate Joint Prosecution agreement, JMR is pursuing the claims of Progressive Services, Inc....("Progressive") against the Project Owner pertaining to a differing site condition alleged by Progressive pertaining to roofing removal and replacement in connection with...the Air Force Contract for Repair Roof, Flightline Support, B1086 at Beale AFB, California.... In connection with the pursuit of the said claims, the Contract Disputes Act requires a Contractor Certification that the claims are made in good faith, that the supporting data is accurate and complete to the best of the contractor's knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable. JMR does not have sufficient or personal knowledge, particularly as to Progressive's supporting data, to execute such a certification.

3

Scott Manning, Treasurer for Progressive, does possess such knowledge.

Accordingly, the undersigned hereby names, nominates and appoints Scott Manning…in JMR's name, place and stead, to sign its name and execute on its behalf the Contractor's Certification. The undersigned does hereby consent to, ratify and confirm everything which the said attorney-in-fact, pursuant to the powers herein contained, shall legally do by virtue of these presents.

This Limited Power of Attorney shall not be affected by any disability and shall expire January 31, 2013.

IN WITNESS WHEREOF, the undersigned have hereunto executed this document on this 21st day of December, 2012.

JMR Construction Corp.

___JoAnne [illegible]___   By: ___Ron [illegible]___
Witness                          Its: Vice President

(Gov't resp., attach. 1 at 8 of 8)

12. CO Siiberg denied PHA-JMR's 30 April 2013 claim on 26 August 2013. PHA-JMR timely appealed from that decision on 22 November 2013.

## Contentions of the Parties

Appellant argues that once the appeal record added the Limited Power of Attorney appointing Scott Manning as attorney-in-fact on behalf of JMR to certify PHA-JMR JV's claim, PHA-JMR JV's January 2013 "written certified claim" met all the statutory requirements. The 31 January 2013 expiration of such power of attorney did not impair the validity of its January 2013 certification. If appellant's January 2013 certification was defective, it is correctible pursuant to the amended CDA. (App. br. at 1-3, 5-7; tr. 6-10) Respondent argues that appellant ignores a fatal defect in its January 2013 certification: court and board decisions precluding delegation to a subcontractor of the prime contractor's authority to execute the prime contractor's CDA certification. An updated limited power of attorney for Mr. Manning to correct a defect is futile, because his power of attorney is invalid. (Gov't resp. at 1-6, attach. 3 at 6; tr. 25, 27-29)

4

## DECISION

We first identify the pertinent statutory, regulatory and decisional requirements and rules for submitting a CDA claim.

> For a contractor claim the CDA requires that: (1) the contractor must submit the demand in writing to the CO, (2) the contractor must submit the demand as a matter of right, and (3) the demand must contain a sum certain. *H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1565 (Fed. Cir. 1995). The claim must request, expressly or implicitly, a final decision of the CO, who must issue a decision thereon, or fail to decide the claim within the prescribed time. *See James M. Ellett Construction Co. v. United States*, 93 F.3d 1537, 1542-43 n.4 (Fed. Cir. 1996). If the contractor's claim exceeds $100,000, it must be certified. *See* 41 U.S.C. § 7103(b)(1).

*ERKA Construction Co.*, ASBCA No. 57618, 12-2 BCA ¶ 35,129 at 172,473-74.

The requirement for a "sum certain" is not in the CDA but is in the FAR § 2.101 definition of a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." *See Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (applying the FAR definition of "claim"); *see also Precision Standard, Inc.*, ASBCA No. 55865, 11-1 BCA ¶ 34,669 at 170,788-89 ("at least $151,749.06" is not a sum certain because "the contractor's use of qualifying language leaves the door open for the request of more money on the same basis," so appeal dismissed for lack of CDA jurisdiction).

On 11 August 2011, when the contract was awarded to PHA-JMR JV, the CDA provided in 41 U.S.C. § 7103(b):

> (b) Certification of claims.–
> (1) Requirements generally.–For claims of more than $100,000 made by a contractor, the contractor shall certify that –
> (A) the claim is made in good faith;
> (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief;
> (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and
> (D) the certifier is authorized to certify the claim on behalf of the contractor.

(2) Who may execute certification.–The certification required by paragraph (1) may be executed by an individual authorized to bind the contractor with respect to the claim.

(3) Failure to certify or defective certification.... A defect in the certification of a claim does not deprive a court or an agency board of jurisdiction over the claim. Prior to the entry of a final judgment by a court or a decision by an agency board, the court or agency board shall require a defective certification to be corrected.

We conclude that appellant's January and April 2013 claims are not proper CDA claims for three reasons.

First, appellant's claims demanded "at least $173,831.00" for extended overhead costs added to Progressive's $57,210 subcontractor claim (SOF ¶ 8). *See Precision Standard*, 11-1 BCA ¶ 34,669 at 170,788-89 (amount qualified by "at least" is not a sum certain); *J.P. Donovan Construction, Inc.*, ASBCA No. 55335, 10-2 BCA ¶ 34,509 at 170,171, *aff'd, J.P. Donovan Construction, Inc. v. Mabus*, 469 F. App'x 903 (Fed. Cir. 2012) ($559,764 subcontractor claim was a sum certain, however, appeal was dismissed for lack of jurisdiction due to the qualification "approximately $65,000" of prime's added claim costs).

Second, signing the PHA-JMR JV claims, as distinguished from signing the claim certification, was not within Mr. Manning's limited power of attorney (SOF ¶ 11). Mr. Manning's limited power of attorney was issued by JMR, not by PHA-JMR JV.

The third reason requires a brief summary of the pertinent rules regarding joint venture claims, which are stated in *WorleyParsons International, Inc.*, ASBCA No. 57930, 14-1 BCA ¶ 35,482 at 173,959-60 (government claim against one JV "partner" dismissed for lack of jurisdiction):

A joint venture is an association of partners established by contract to carry out a single business activity for joint profit. It is essentially a partnership created for a limited purpose. *Sadelmi Joint Venture v. Dalton*, 5 F.3d 510, 513 (Fed. Cir. 1993). Typically, a joint venture has an independent existence from its partners. *See Pine Prods. Corp. v. United States*, 945 F.2d 1555, 1560 (Fed. Cir. 1991). Thus, when the government contracts with a joint venture, the joint venture is the entity with whom the government is in privity of contract, not its partners. *Brother's Cleaning Serv., Inc. v. United States*, 38 Fed. Cl. 106, 108 (1997); *see also Pine Prods*. 945 F.2d at 1561. Contrary to its contention here,

6

> the government has historically opposed efforts by joint
> venture partners to claim independent privity on their joint
> ventures' government contracts, and attempts by partners to
> assert claims in their own names upon such contracts have
> been dismissed.

*See Wackenhut International, Inc. v. Department of State*, CBCA No. 1235, 09-2 BCA ¶ 34,255 at 169,260 (appeal dismissed when one venturer sought to pursue a claim in its own right, rather than by the JV); *Bellinco, Inc. and A-1 Construction Co., Inc. d/b/a/ A-1 Bellinco, Inc. v. Babbitt*, 1996 U.S. App. LEXIS 31362 (Fed. Cir. 1996) (JV agreement provided for a two member committee, Bell and Roberts, but was silent as to whether one member alone could bind or act for the JV; court affirmed Board's dismissal of appeal by Bell alone for lack of jurisdiction); *Kiewit/Tulsa-Houston v. United States*, 981 F.2d 531, 534-45 (Fed. Cir. 1992) (without an express delegation by both venturers, the managing party's general manager lacked authority to bind the JV and so his claim certification was inadequate).

An exception to the foregoing rule arises when a joint venture agreement expressly authorizes one venturer or partner to assert a claim against the government and to execute a CDA certification on behalf of the JV. *E.g., Newberg-Brinderson*, ASBCA No. 44845, 94-3 BCA ¶ 27,095 at 135,009 (Dale Gold, vice-president of Newberg, the "Managing Venturer," and authorized by both venturers to execute "all other documents...necessary ...to perform and complete construction contracts" had authority to sign the claim certification); *Stradedile/Aegis Joint Venture*, ASBCA No. 39818, 95-1 BCA ¶ 27,397 at 136,587-88 (the presidents of both co-venturers signed the CDA certification of the JV's claim, though not expressly so authorized by the JV agreement; government's motion to dismiss for lack of jurisdiction denied). This exception is not applicable here.

Applying the foregoing JV rules to this dispute, JMR's vice president executed Mr. Manning's limited power of attorney on behalf of JMR (SOF ¶ 11). There is no evidence, such as the PHA-JMR JV joint venture agreement, that JMR was authorized to execute a power of attorney on behalf of the PHA-JMR JV or for Mr. Manning to sign PHA-JMR JV's claim (SOF ¶¶ 3, 11). And in fact the limited power of attorney does not mention the joint venture or the joint venture's claim that is in addition to Progressive's claimed amount. For the foregoing reasons, we hold that appellant has not submitted a valid CDA claim. Therefore, we need not decide whether a subcontractor's treasurer can be authorized to execute a CDA certification pursuant to a limited power of attorney signed by one of the two venturers of PHA-JMR JV.

## CONCLUSION

We dismiss the appeal for lack of jurisdiction, without prejudice to appellant's right to submit a compliant CDA claim to the CO. We encourage PHA-JMR JV (the contractor) to pay particular attention to who is signing claims and certifications, and in what capacity they are signing.

Dated: 1 August 2014

DAVID W. JAMES, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

ELIZABETH A. TUNKS
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59032, Appeal of PHA-JMR JV, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals