# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Military Aircraft Parts ) | ASBCA No. 60290 |
| ) | |
| Under Contract Nos. SPM4A7-09-M-6653 ) | |
| SPM4A7-10-M-3828 ) | |
| SPM4A7-11-M-G805 ) | |

APPEARANCE FOR THE APPELLANT:          Mr. Robert E. Marin
                                       President

APPEARANCES FOR THE GOVERNMENT:        Daniel K. Poling, Esq.
                                        DLA Chief Trial Attorney
                                       Edward R. Murray, Esq.
                                       Jason D. Morgan, Esq.
                                        Trial Attorneys
                                        DLA Aviation
                                        Richmond, VA

## OPINION BY ADMINISTRATIVE JUDGE O'SULLIVAN ON THE GOVERNMENT'S MOTION TO DISMISS

The government has filed a motion to dismiss this Board Rule 12.3 appeal without prejudice as premature under Board Rule 18. Appellant opposes. For the reasons stated below, we deny the motion.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

On 17 March 2009, the government issued Order No. SPM4A7-09-M-6653 (Order 6653) to appellant Military Aircraft Parts (MAP) for aircraft fairings for the C-130 aircraft (R4, tab A1 at 1). This order was accepted and signed by MAP on 18 March 2009, and contains the clause at FAR 52.249-1, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (SHORT FORM) (APR 1984) (*id.* at 1, 16). The order required MAP to manufacture two units for First Article Test (FAT), with thirteen production units to be delivered after first article approval (*id.* at 9-11, 15). The total price of Order 6653 was $22,015.00 (*id.* at 1).

On 10 December 2009, the government issued Order No. SPM4A7-10-M-3828 (Order 3828) to MAP for additional C-130 aircraft fairings. This order required one FAT unit and seven production units. (R4, tab B1 at 8-9) The total price of Order 3828 was $16,450 (*id.* at 1). Order 3828 was followed on 21 January 2011 by Order

No. SPM4A7-11-M-G805 (Order G805) for an additional two production units and one FAT unit (R4, tab C1 at 9-10). The total price of Order G805 was $3,680.00 (*id.* at 1).

MAP shipped two FAT units on 17 May 2012, with an expected delivery date of 24 May 2012, for testing under Order 6653 (R4, tab A5). The government completed its testing on or about 14 November 2012. The test results indicated that the part met the tests for heat treatment, conversion coating, chemical composition, and organic finish requirement. (R4, tab A6 at 4) For the form, fit and function test, one dimensional measurement was noted to be out of tolerance, but the mechanical engineer who performed the measurement commented that the difference was "Possible Trim" (*id.* at 9). In addition, the visual layover test resulted in a discrepancy noted as "curvature mid-way right side too much" (*id.* at 8). With respect to this, the conclusion by the engineer who signed the test report was:

> The first article's loft surface contour was compared to mylar number 337510 and 337530. The contour of the first article matched the contour data on both mylars. Project engineer should confirm these findings to determine impact on mission requirements.

(*Id.* at 9)

The same day, 14 November 2012, an email from BG Scott Jansson of DLA Aviation to Mr. Marin of MAP noted that the part had passed laboratory testing but "has failed the FIT check. We are awaiting the Lead Engineer's review to either pass or fail the FIT." (R4, tab A7 at 2)

The record does not contain any information about the specifics of that review. On 19 November 2012 a Notification of FAT results under Order No. 6653 was issued. The first article was disapproved, with a recommendation from engineering that the vendor be allowed to correct the discrepancies and resubmit the first article within 90 days of notification of the results. (R4, tab A9 at 1) With respect to the two noted discrepancies, this document stated:

> Even though the part fit the mylars, during the form fit test, the part failed to align correctly in the center curvature at the WS83 end. The mylar only checks the open ends, not alignment or position. The deviation on dimension #3 can be attributed to trim.

(*Id.*) On 7 December 2012, a letter from the contracting officer (CO), Alicia Wolford, was sent to MAP. In that letter, Ms. Wolford stated that MAP's first article was

disapproved and "this contract could be terminated for default." (R4, tab A10 at 2) She further informed MAP that a bilateral modification would be forwarded cancelling the contract in its entirety at no cost to either party (id.). There is no explanation in the record of why the CO decided not to follow the engineering recommendation that MAP be allowed to correct the two discrepancies and resubmit its first article.

On 12 December 2012, MAP forwarded CO Wolford's letter to Randall Fritz, a Defense Contract Management Agency (DCMA) quality assurance specialist, stating:

> We recently had our FA fail in the attached letter. I believe this part is used as part of the fairing for the C-130 and the aircraft may be at Mc[C]lellan/US Coast Guard base.
>
> In the past they have allowed us to inspect their plane and perhaps we could do this again.
>
> We don't know why the part failed, as it matches a sample part we have very well. We also hold two other contracts for this part and I don't know how DOD will ever obtain more parts if the data to build it is incorrect, as their letter implies.
>
> Would you consider working with us to get onto the base if we can confirm this part is used for aircraft they have? We would like to put our part up against the aircraft for comparison.

(R4, tab A15 at 24) On the same day, Mr. Fritz forwarded the request on to Lisa Hardy, the DLA contract specialist, stating in part:

> Please see Rob's request below:
> I am not sure DCMA (QAR's) will be assisting MAP with this request. These contracts are late, and made wrong per the letter. I like how he is concerned with "how EVER will DoD obtain these parts again."

(Id. at 27) Ms. Hardy responded on 31 December 2012:

> Randy, the modification to cancel this one has been executed and I am working on cancelling the other two contracts/orders as quickly as I can due to non-shipment and FAT failure of the -6653 contract. Thank you.

(*Id.*) Meanwhile, MAP had written to Ms. Hardy on 21 December 2012 noting that the "FA rejection for this NSN is vague, seems to suggest our part was made properly to the mylar and our part appears to be made correctly to the data and a sample part we obtained." MAP further advised that it was working to obtain access to the C-130 at McClellan to check the part, and that it had spent $18,671 on the item to date and wanted to determine the source of failure. MAP requested 30 days to evaluate the recent first article disapproval. (*Id.* at 30)

Unilateral Modification No. P00002 cancelling Order 6653 was signed by CO Wolford on 8 December 2012 (R4, tab A3). Unilateral Modification No. P00001 cancelling Order 3828 was signed by CO Janice Hicks on 6 May 2013, although a letter from CO Wolford expressing the government's intent to cancel was sent to MAP on 17 December 2012 (R4, tabs B2, B10). Order G805 was cancelled at no cost to either party by bilateral modification dated 13 June 2013, although a letter notifying MAP that the modification would be forwarded for signature was sent to MAP on 17 December 2012 (R4, tabs C2, C5). On 29 May 2013, CO Hicks acknowledged that the cancellation of Order 6653 was processed without Mr. Marin's signature, but stated: "At this time, we will leave it the way it was signed unless the Contractor questions the validity of the modification" (R4, tab A14). At this time, MAP was still seeking assistance in accessing the C-130 aircraft at the Coast Guard facility to determine the cause of first article failure (*id.*). Subsequently, MAP's request for assistance in accessing the aircraft was denied by DCMA on the grounds that MAP's contracts had all been cancelled and DCMA could not validate the need for a fit check due to the lack of active contracts for the part (R4, tab A15 at 44-45).

On 27 May 2015, MAP submitted a claim to DLA for breach of contract, citing all three orders and raising, among other issues, defective specifications, insufficient justification for first article disapproval, failure to provide an opportunity to correct minor defects, and government acts inconsistent with the purpose of the contract, including a failure to cooperate to resolve first article issues. The sum claimed pursuant to Order 6653 was $17,924.52, consisting of direct material and labor costs, profit of $1,215.66, and $500.00 for consideration provided for a modification extending delivery dates. An additional $708.75 on Order 3828 and $268.50 on Order G805 was claimed for anticipatory profit, for a total claim of $18,901.77. (R4, tab A15 at 1-4)

CO Hicks issued a final decision on MAP's claim on 21 July 2015 (R4, tab A16). In that decision, she acknowledged that CO Wolford had improperly executed a unilateral (vs. bilateral) cancellation of Order 6653 before providing MAP with notification of the first article failure (*id.* at 4). She ascribed this action to an incorrect belief on the part of CO Wolford that MAP had requested a no-cost

4

cancellation of Order 6653, and stated that, accordingly, the cancellation would be converted to a termination for the convenience of the government (*id.* at 4-5). CO Hicks denied any relief with respect to Orders 3828 or G805 (*id.* at 5). The modification converting the cancellation of Order 6653 to a termination for the convenience of the government was subsequently issued on 16 October 2015 (R4, tab A4). The government's motion to dismiss this appeal followed on 2 November 2015.

DISCUSSION

The government asserts that this appeal is premature because MAP has not submitted a termination settlement proposal pursuant to the procedures set forth in FAR Part 49. According to the government, unless MAP submits a proposal, and until the parties' negotiations on that proposal reach impasse and the CO issues a unilateral determination, MAP may not file an appeal at the Board, and the Board is without jurisdiction to hear those portions of MAP's appeal involving amounts compensable under the termination for convenience clause. (Gov't mot. at 2)

MAP counters, *inter alia*, that (1) the CO's final decision is an attempt to use an untimely termination for convenience to avoid airing of the facts supporting a breach of contract on the part of the government; and (2) granting the government's motion would deprive MAP of the benefits of the Board's accelerated Rule 12 process and unduly delay the resolution of its claim to its prejudice (app. reply at 1-5).

In *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537 (Fed. Cir. 1996), the court decided that a contractor is not precluded by a pending termination settlement proposal from pursuing contract claims independent of that proposal. In *Ellett*, the Forest Service terminated for convenience, two months after award, a contract for the construction of a logging road. Shortly thereafter, the contractor submitted a claim for $545,157.19, followed by a termination settlement proposal.*

On appeal from the trial court's dismissal of Ellett's suit for lack of jurisdiction, the United States Court of Appeals for the Federal Circuit rejected the government's argument that once it terminated the contract for convenience, Ellett's earlier claim submission could not be pursued independently. The court agreed with the contractor that the government does not have the authority "for simply eliminating valid contractor claims by terminating the contract." 93 F.3d at 1546. The court duly noted that the Contract Disputes Act provides for interest to run on contractor claims, while under the regulations, no interest is allowed on termination settlement proposals. *Id.* at 1547. It stated further:

---

* Ellett subsequently filed suit in the U.S. Court of Federal Claims

It does not stand to reason that the government can avoid a statutory right to interest on a claim by simply terminating the contract for convenience. We do not suggest that contracting officers would intentionally do so; we presume they perform their duties in good faith, and in accordance with the law and governing regulations. Nevertheless, we cannot endorse a scheme that would circumvent Congress's stated desire to grant contractors interest on valid, properly certified claims. [Citation omitted]

*Id.* Thus, Ellett was entitled to pursue its separate claim for increased costs, which was either constructively denied by the CO or deemed denied since the CO did not address the merits. "Either way, the trial court had jurisdiction." *Id.* at 1548.

In *Agility Defense & Government Services, Inc.,* ASBCA Nos. 58870, 59261, 15-1 BCA ¶ 35,810, we followed *Ellett* in rejecting an argument by DLA that the Board lacked jurisdiction over a pre-termination claim once the contract was terminated for convenience and appellant failed to submit a termination proposal. We disagreed with the government's argument that the relief available under the pre-termination claim would be the same as that available under the later termination, noting for instance that the timing of the termination could have a significant impact on the measure of recovery. In addition, we disagreed that the pre-termination claim was merged into the subsequent termination for convenience:

Independent claims are not necessarily merged into the termination of the same contract under which the claim arose and may be appealed separately from the termination for convenience appeal.

15-1 BCA ¶ 35,810 at 175,133 (citing *James M. Ellett*, 93 F.3d at 1548; *RW Electronics Corp.,* ASBCA No. 46592, 96-2 BCA ¶ 28,540).

In this case, DLA converted its contract cancellation into a termination for convenience, so there may be no difference in the timing of the operative event. However, MAP's claim is not for constructive termination, but for breach. Therefore, the measure of damages may be significantly different from that available under a termination for convenience, even a retroactive one. Moreover, as the Federal Circuit held in *Ellett*, the CDA grants contractors a right to interest on their claims, whereas interest does not run on a termination settlement proposal. Therefore, we find that MAP's breach claim is an independent claim that is not merged into the government's subsequent termination for convenience. We have jurisdiction.

6

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss is denied.

Dated: 4 February 2016

LYNDA T. O'SULLIVAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60290, Appeal of Military Aircraft Parts, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals