# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of --          )
                             )

Thorpe See-Op Corporation      )     ASBCA Nos. 58960, 58961
                             )

Under Contract No. W911W6-05-C-0047  )

| APPEARANCE FOR THE APPELLANT: | Mr. Virgil Clark<br>Vice President |
|---|---|
| APPEARANCES FOR THE GOVERNMENT: | E. Michael Chiaparas, Esq.<br>  DCMA Chief Trial Attorney<br>Stephen D. Sanders, Esq.<br>  Trial Attorney<br>  Defense Contract Management Agency<br>  Dallas, TX<br>Douglas R. Jacobson, Esq.<br>  Trial Attorney<br>  Defense Contract Management Agency<br>  Bloomington, MN |

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL
## ON THE PARTIES' DISPOSITIVE MOTIONS

Appellant asserts that the government's claim in ASBCA No. 58960 is barred by the statute of limitations, an assertion that we treat as a motion to dismiss for lack of jurisdiction. Both parties move for summary judgment in ASBCA No. 58960, and the government also moves for summary judgment in ASBCA No. 58961. The Board denies the motions.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. On 24 January 2005, the Aviation Applied Technology Directorate (AATD) (government) awarded Contract No. W911W6-05-C-0047, a cost-plus-fixed-fee contract for $500,000, to Thorpe See-Op Corporation (appellant), to design a sensor and weapons equipped software test Wing Store Unmanned Aerial Vehicle (R4, tab 1, at 1, 4).

2. On 9 May 2005, the government increased the contract amount to $570,000 (R4, tab 8 at 27).

3. On 5 June 2005, the government ordered appellant to stop work (R4, tab 10 at 34).

4. On 7 July 2005, the government determined that appellant had completed only 15% percent of the contract work (R4, tab 10 at 34).

5. On 22 August 2005, the contracting officer (CO) issued a unilateral modification terminating the contract for convenience pursuant to FAR clause 52.249-6, which the modification stated was read into the contract pursuant to *G.L. Christian & Assocs. v. United States*, 320 F.2d 345 (Ct. Cl. 1963) (R4, tab 12 at 40-41).

6. On 9 October 2006, appellant submitted a settlement proposal to the government (R4, tab 16 at 56). The proposal sought payment of $25,171.51 to appellant, consisting of $328,195.08 in costs and fee, minus $303,023.57 already paid (*id.*).

7. On 28 February 2008, the termination contracting officer (TCO) informed appellant that the government had determined that appellant's books and records were not auditable, and provided appellant 15 days within which to provide additional written evidence to support its proposed settlement amount (R4, tab 21).

8. On 20 March 2008, the TCO informed appellant that because appellant had not submitted additional written evidence, the government had concluded that the parties were at an impasse (R4, tab 22).

9. On 24 July 2008, the TCO informed appellant by letter that appellant owed the government $213,173.44 (R4, tab 26 at 71). The TCO calculated that, based upon AATD's determination of the percentage of completion of the contract work (15%), appellant was entitled to $87,500, consisting of 15% of the contract amount for costs and fee ($85,500), plus $2,000 in settlement expenses (*id.*). Because the government determined that appellant had already been paid $300,673.44,[1] the TCO determined that appellant owed the government $213,173.44 ($300,673.44 minus $87,500) (*id.*).

10. In May 2011, appellant presented two revised termination settlement proposals, ultimately requesting $339,071.88, and the parties reopened negotiations (R4, tabs 35, 36, 38).

11. On 1 July 2011, the Defense Contract Audit Agency (DCAA) issued a report determining that appellant's settlement proposal was inadequate for audit (R4, tab 43).

---

[1] We need not, at this stage, resolve the parties' apparent disagreement regarding the amount the government has already paid appellant.

12. On 25 July 2011, appellant submitted a further revised termination settlement proposal, requesting payment of $359,963.14 (R4, tab 45).

13. On 29 June 2012, DCAA issued a report determining that the "cost or pricing data submitted by [appellant] [were] not adequate," and that the proposal was not "an acceptable basis for negotiation of a fair and reasonable price" (R4, tab 72 at 544).

14. On 6 July 2012, appellant submitted to the government appellant's rebuttal to the DCAA report (R4, tabs 76, 77).

15. On 14 September 2012, the TCO, after review of the DCAA report and appellant's rebuttal, offered a settlement by which appellant would pay the government $203,524 (R4, tab 79 at 636).

16. On 18 September 2012, appellant informed the government that its offer was unacceptable, and that appellant assumed that the government would proceed with a final determination so appellant could file a claim against the government (R4, tab 80 at 638-39).

17. By 15 October 2012, the parties had reached an impasse. On 15 October 2012, the government informed appellant that it had "reevaulated for a possible increase to [its] initial offer," but that its September 2012 offer was its "best and final." Noting that appellant had stated that the offer was unacceptable, the government concluded that negotiations were an impasse. The government informed appellant that a CO's determination would follow. (R4, tab 80 at 638)

18. On 16 January 2013, the CO informed appellant again that the government considered the parties to be at an impasse (R4, tab 82).

19. On 15 July 2013, the CO unilaterally issued Modification No. A0004, citing FAR 52.249-6, and demanding that appellant pay the government $193,773 (R4, tab 98 at 676). The CO determined that appellant was entitled to $106,900 in costs, fee, and settlement expenses, minus $300,673.44 already paid (*id.*). As in his 24 July 2008 letter, the CO allowed 15% of the contract amount for cost and fee ($85,500),[2] to which he added $21,400 in settlement expenses (*id.* at 679-80).

---

[2] Modification No. A0004 contains, in two places, a typographical error pertaining to the amount for total cost. Pages 1 and 2 of the modification recite the amount as $81,424. Page 4 recites the amount as $81,428. For the total modification amount to sum to $106,900, the cost component of that amount must be $81,428 ($81,428 plus $4,072 plus $21,400 equals $106,900), making the cost and fee component total $81,500 ($81,428 plus $4,072 equals $81,500). (R4, tab 98)

3

20. On 12 August 2013, appellant presented to the CO a certified claim in the amount of $579,140.19 (R4, tab 99). The CO has not issued a final decision upon that certified claim.

21. Appellant filed a timely notice of appeal on 15 October 2013 (the first business day occurring 90 days after 15 July 2013), challenging Modification No. 4. We docketed that appeal as ASBCA No. 58960. Appellant also filed a notice of appeal on 15 October 2013, challenging the deemed denial of its certified claim. We docketed that appeal as ASBCA No. 58961.

## DECISION

*The Parties' Payment Claims: Jurisdiction*

Appellant contends that Modification No. 4, which the CO issued on 15 July 2013 demanding payment of a claimed overpayment to appellant, is barred by the statute of limitations. We treat that as a motion to dismiss ASBCA No. 58960 for lack of jurisdiction. *Raytheon Missile Systems*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,016. We also raised, *sua sponte*, the issue whether appellant's payment claim is barred by the statute of limitations.

Each claim relating to a contract shall be the subject of a written decision by the contracting officer. Contract Disputes Act (CDA), 41 U.S.C. § 7103(a)(3). Each claim shall be submitted within six years after the accrual of the claim. 41 U.S.C. § 7103(a)(4)(A). Accrual of a claim means the date when all events, that fix the alleged liability of either the government or the contractor and permit assertion of the claim, were known or should have been known. FAR 33.201.

We conclude the parties' payment claims accrued on 15 October 2012, fewer than six years before the CO issued Modification No. 4 in 2013, and fewer than six years before appellant presented its certified claim to the CO, also in 2013. Consequently, the parties' payment claims are not barred by the statute of limitations. Where contract termination settlement procedures provide for the parties to attempt to negotiate a settlement, a claim for payment arising from those procedures prior to an impasse in such negotiations is premature. *See Triad Mechanical, Inc.*, ASBCA No. 57971, 12-1 BCA ¶ 35,015 at 172,059 (contractor claim prior to impasse premature); *see also James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1544 (Fed. Cir. 1996) (termination proposal ripens into claim once negotiations reach impasse). Therefore, in such a case, no claim for payment arising from the termination of a contract for convenience and the review of a contractor's settlement proposal accrues prior to the parties having reached an impasse.

4

This is such a case. Federal Acquisition Regulation (FAR) clause 52.249-6, which the CO cited and the parties agree governs, provides, at paragraph (h), for a CO's unilateral determination of a payment amount in the event the parties reach an impasse:

> If the Contractor and the Contracting Officer fail to agree in whole or in part on the amount of costs and/or fee to be paid because of the termination of work, the Contracting Officer shall determine, on the basis of information available, the amount, if any, due the Contractor, and shall pay that amount....

Here, after the government concluded in 2008, that the parties were at an impasse (SOF ¶ 9), the parties resumed negotiations fewer than six years later, in 2011, over a revised termination settlement proposal that appellant submitted in July 2011 (SOF ¶¶ 12, 14-15). By 15 October 2012, the parties again were at an impasse: the government made an offer in September 2012, that appellant found unacceptable, prompting appellant to request a CO's final determination that would allow it to submit a claim (SOF ¶¶ 15-17). Although, in response, the government indicated that it had reevaluated its September 2012 offer, the government on 15 October 2012, confirmed that the offer was its "best and final," and that the CO would issue a determination (SOF ¶¶ 15, 17). Although the CO would not issue Modification No. 4 until July 2013 (SOF ¶ 19), and although appellant would not present its certified claim until August 2013 (SOF ¶ 20), there is no evidence of any negotiations between the parties after 15 October 2012.

Appellant accepts 15 October 2012 as the date of impasse, but contends that the issue of impasse is irrelevant to payments that the government made through 1 May 2005 (app. resp. at 12 (referencing "Claim 1"); compl. at 4). That contention is incorrect. FAR clause 52.249-6(m)(2) provides that, as part of the termination settlement process, "[i]f the total payments exceed the amount finally determined to be due, the Contractor shall repay the excess to the Government upon demand." Consequently, a CO's unilateral determination of a termination settlement amount takes into account payments already made to a contractor, regardless of how long before that determination those payments were made. An impasse is the final event that "fixes" the parties' payment liabilities pursuant to the termination settlement process; the calculation of the amount of those liabilities will include any payments to the contractor.

Because a payment claim by either party prior to an impasse in negotiations would have been premature, no payment claim accrued to either party before 15 October 2012, the date the parties reached their final impasse (SOF ¶ 17). Consequently, neither party's payment claim is untimely; each was presented in 2013,

within six years of 15 October 2012 (SOF ¶¶ 19-20). Therefore, the Board denies appellant's motion to dismiss ASBCA No. 58960 (the government's overpayment claim), and finds jurisdiction to entertain ASBCA No. 58961 (appellant's payment claim), as well.

*Merits of Parties' Payment Claims*

Each party requests summary judgment in its favor upon the government's claim to payment pursuant to the termination clause, and the government requests summary judgment upon appellant's claim to payment pursuant to the same clause. Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987).

The parties agree that FAR clause 52.249-6, TERMINATION (COST-REIMBURSEMENT) (MAY 2004), governs their claims (gov't mot. at 6, ¶ 12; app. 7 February 2014 mot. at 2). That provision provides for payment to a contractor of an amount, if any, due to the contractor, to be determined according to a list of specified items. FAR 52.249-6(h). Those items include certain costs, settlement expenses, and "[a] portion of the fee payable under the contract, determined as follows":

> If the contract is terminated for the convenience of the Government, the settlement shall include a percentage of the fee equal to the percentage of completion of work contemplated under the contract....

FAR 52.249-6(h)(1)-(4)(i). Consequently, the percentage of completion of work contemplated under the contract is material to determining whether either party is entitled to judgment in its favor, because that percentage and the resulting fee are part of the calculation of the amount, if any, owed to either party.

However, among the issues of disagreement between the parties is the percentage of completion of work contemplated under the contract. Both parties admit this: "Percentage of Completion: This is a material fact that is still in dispute" (gov't mot. at 37); "The percentage of completion is indeed a matter of dispute" (app. opp'n at 12). Relying upon its 7 July 2005 trip report, the government appears to contend that appellant completed 15% of the work (gov't mot. at 37); relying upon the payment of Voucher Nos. 1 through 7, appellant appears to contend that it completed 60% (app. opp'n at 5-6). In any event, neither party proposes that its view of the percentage of completion of work contemplated by the contract is not a material fact in genuine dispute. Because there is at least one genuine dispute of material fact, neither party is entitled to judgment as a matter of law.

The government appears to contend that a failure by appellant to provide adequate documentation of its costs would entitle the government to summary judgment (gov't opp'n at 11). However, the issue raised by the parties' summary judgment motions is whether there is a genuine dispute as to any material fact, not whether appellant can adequately document its costs. The Board has identified at least one such dispute; whether appellant can adequately document its costs is an issue for another day.

For these reasons, the Board denies both parties' motions for summary judgment in ASBCA No. 58960, and denies the government's motion for summary judgment in ASBCA No. 58961.

Their motions having been denied, the parties shall, within 21 days of the date of this decision, file a jointly-proposed schedule for further proceedings.

Dated: 4 December 2014

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 58960, 58961, Appeals of Thorpe See-Op Corporation, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals