ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| LR General Solutions, LLC | ) ASBCA No. 63458 |
| | ) |
| Under Contract No. W91151-15-C-0066 | ) |

APPEARANCES FOR THE APPELLANT:     H. Todd Whay, Esq.
         Ian A. Cronogue, Esq.
          Baker, Cronogue, Tolle & Werfel, LLP
          McLean, VA

APPEARANCES FOR THE GOVERNMENT:     Scott N. Flesch, Esq.
          Army Chief Trial Attorney
         MAJ Brittney N. Montgomery, JA
          Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE EYESTER
REGARDING JURISDICTION

The Board *sua sponte* raised the issue of whether it possesses jurisdiction over the claim submitted by LR General Solutions, LLC (LR or appellant) to the Department of the Army (government) seeking payment pursuant to a contract for road repairs. For the reasons set forth below, we hold that we do not have jurisdiction to consider the claim.

STATEMENT OF FACTS

On September 15, 2015, the Mission and Installation Contracting Command awarded fixed-priced C.ontract No. W91151-15-C-0066 to LR for the repair of course and service roads at the Lone Star Multi-Use Range, Ft. Hood (R4, tab 1 at 1-2, 7, 11). The contract incorporated by reference Federal Acquisition Regulation (FAR) 52.233-1, DISPUTES (MAY 2014) and FAR 52.249-3 Alt I, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (DISMANTLING, DEMOLITION, OR REMOVAL OF IMPROVEMENT) (APR 2012) – Alternate I (SEP 1996) (*id.* at 11-12).

On March 23, 2016, the government notified LR that it intended to terminate the contract for convenience and instructed LR to submit a termination settlement proposal in accordance with FAR part 49 (R4, tab 39). The government later issued Modification No. P00003, signed May 12, 2016, and unilaterally terminated the contract for the convenience of the government pursuant to FAR 52.249-3 (R4, tab 41).

On March 30, 2022, LR emailed the contracting officer a letter titled "LR General Solutions Claim for W91151-15C-0066.pdf" (R4, tab 42 at 1). The letter stated LR was "submitting a claim in the total amount of $296,263.38," and was signed by the owner of LR (R4, tab 42c at 1, 3). The letter included two enclosures, one of which was Standard Form (SF) 1437 (*id.* at 1, 4). The attached SF 1437, titled "Settlement Proposal for Cost-Reimbursement Type Contracts," set forth the list of items for which LR was seeking reimbursement and the total net payment requested. The SF 1437 included the following relevant certification language:

> This is to certify that the undersigned, individually, and as an authorized representative of the Contractor, has examined this termination settlement proposal and that, to the best knowledge and belief of the undersigned:
>
> (a) AS TO THE CONTRACTOR'S OWN CHARGES. (1) The proposed settlement (exclusive of charges set forth in Item 10) . . . have been prepared from the books of account and records of the Contractor in accordance with recognized commercial accounting practices; they include only those charges allocable to the terminated portion of this contract; they have been prepared with knowledge that they will, or may, be used directly or indirectly as the basis of settlement of a termination settlement proposal or claim against an agency of the United States; and the charges as stated are fair and reasonable. . . .

(R4, tab 42c at 4) The SF 1437 included a section for the name of the contractor and an authorized official of the contractor to sign the form; LR's SF 1437 set forth its name as the contractor but was unsigned (*id.*).

On June 1, 2022, the contracting officer requested LR provide supporting documents. LR tried several times to submit the documents but failed to do so. The contracting officer notified LR via email that the documents were due by June 28, 2022; however, the email was sent to an incorrect address. (R4, tabs 44-45) On July 6, 2022, the contracting officer notified LR of the final decision dismissing the claim for lack of supporting documentation and noting that as a result, there could be no settlement of the termination for convenience in accordance with FAR 49.105 (R4, tabs 46-47).

LR notified the contracting officer that the email requesting documents was submitted to an incorrect address and ultimately submitted the documents to the contracting officer on July 6, 2022 (R4, tabs 44-45). These documents included a "Claim Submittal Letter" signed by LR's owner seeking $296,263.38 (R4, tab 49 at 1-2, 4). Again, the letter included an SF 1437 as an attachment (*id.* at 2). The

2

attached SF 1437 set forth the list of items for which LR was seeking reimbursement and the total net payment requested. The SF 1437 included the same certification language as set forth above. Although the SF 1437 set forth the name of the contractor, it was again left unsigned. (R4, tab 50)

On August 26, 2022, the contracting officer denied the claim (R4, tab 77a). According to the contracting officer's final decision (COFD), the claim failed to provide sufficient supporting documents, or an explanation of costs incurred. In addition, the COFD explained that neither the March 30, 2022 or the July 6, 2022 claims contained the signed certification required by FAR 33.207 for claims exceeding $100,000 and noted that LR failed to sign the SF 1437. (*Id.* at 3)

On November 18, 2022, LR filed its notice of appeal. The Board ordered the parties to brief the issue of whether LR submitted a signed certification as required by the Contract Disputes Act (CDA), 41 U.S.C. § 7103(b)(1).

DECISION

Appellant argues that its submission to the government was a claim and the certification set forth on the SF 1437 met the CDA's requirements because it substantially complies with the required certification language (app. br. at 4; app. reply at 1-5). Appellant further argues that LR's owner signed the claim letter, and this signature was equally applicable to the attached SF 1437 (app. br. at 4-5; app. reply at 5-6). Appellant argues placement of a certification signature is unimportant if it was intended to apply to the certification and when interpreting the claim, the Board must consider LR's claim package as a whole (app. br. at 4-6; app. reply at 5-6). Appellant submitted a signed declaration by LR's owner stating that she prepared the claim, believed the signature block at the end of the certification of the SF 1437 was to be signed by a government official, and believed the signature on the claim letter applied to and authenticated all documents in the claim package (app. br., ex. 1 at 1-2).

The government argues LR's claim failed to include the specific certification language required by the CDA, the FAR and LR's contract (which included FAR 52.233-1, DISPUTES (May 2014)) (gov't resp. at 4-5, 9-10). Specifically, the government contends the SF 1437 is not a claim, but a settlement proposal and in fact, the certification language in the form specifically states the certification applies to the "termination settlement proposal" (*id.* at 5-7). The government further argues there was no signature on the SF 1437, and the signature on the claim letter is inapplicable as it was not on the standard form certification (*id.* at 8-12). Therefore, the government argues there was a defective certification that cannot be cured and the Board lacks jurisdiction (*id.* at 7).

LR bears the burden of establishing jurisdiction by a preponderance of the evidence. *Najmaa Alshimal Co.*, ASBCA No. 62701, 21-1 BCA ¶ 37,872 at 183,899.

3

The Board's jurisdiction is governed by the CDA, which requires the contractor's submission of a claim to the contracting officer for decision. 41 U.S.C. § 7103(a)(1). The CDA does not define the term "claim". Rather, we look to the FAR, which defines a claim generally as a written demand by a contracting party seeking the payment of money in a sum certain, adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. FAR 2.101.

The CDA and FAR require certification of claims exceeding $100,000. Specifically, the CDA requires the contractor certify that: (a) the claim is made in good faith; (b) the supporting data are accurate and complete to the best of the contractor's knowledge and belief; (c) the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable; and (d) the certifier is authorized to certify the claim on behalf of the contractor. 41 U.S.C. § 7103(b)(1); *see also* FAR 33.207(c), 52.233-1(d)(2)(iii). Therefore, the FAR explains that "a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under [the CDA], until certified as required by the statute." FAR 2.101.

In some cases, a claim certification may be "defective;" however by statute, the Board still possesses jurisdiction to consider the claim, but must order the defect corrected. 41 U.S.C. § 7103(b)(3); FAR 33.207(f); *Kamaludin Slyman CSC*, ASBCA No. 62006 *et al.*, 21-1 BCA ¶ 37,849 at 183,793 (citing *Dai Global v. Admin. of the United States Agency for Int'l Dev.*, 945 F.3d 1196, 1198 (Fed. Cir. 2019)). The CDA does not set forth a definition of a defective certification. The FAR, however, defines a defective certification as one "which alters or otherwise deviates from the language in 33.207(c) or which is not executed by a person authorized to bind the contractor with respect to the claim." FAR 33.201. The failure to certify a claim is not a defective certification and therefore cannot be corrected. *See id.*

Here, the only certification LR submitted was on the SF 1437, a form used for settlement proposals (*see* R4, tabs 42c at 4, 49 at 2). The government argues the submissions were therefore not claims but termination settlement proposals (gov't resp. at 9). In this regard, as the contract was terminated for convenience, the applicable contract clause, FAR 52.249-3 Alt I, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (DISMANTLING, DEMOLITION, OR REMOVAL OF IMPROVEMENT) (APR 2012) – Alternate I (SEP 1996), required LR to "submit a final termination settlement proposal to the Contracting Officer in the form and with the certification prescribed by the Contracting Officer" within a prescribed time period. FAR 52.249-3(e). The contracting officer instructed LR only to submit its termination settlement proposal in accordance with FAR Part 49 (R4, tab 39).

There is nothing in the record showing LR submitted a termination settlement proposal prior to its March 30, 2022, submission to the contracting officer titled "LR General Solutions Claim for W91151-15C-0066.pdf" and enclosing the SF 1437 (R4,

4

tab 42 at 1). In fact, the contracting officer seemed to consider this March 30 submission a termination settlement proposal and claim (R4, tab 46).

If LR's submissions to the contracting officer are considered termination settlement proposals, then they ripened into a claim once there was an impasse. *See James M. Ellett Constr. Co. v. U.S.*, 93 F.3d 1537, 1544 (Fed. Cir. 1996). As the court in *Ellett* explained, the FAR contemplates that a termination settlement proposal could ripen into a claim requiring the contracting officer issue a unilateral settlement determination and therefore "implicitly includes termination settlement proposals within the operative definition of a claim to the extent they are not favorably resolved by a contracting officer's decision." *Id.* As a result, once the contracting officer issues its COFD on a termination settlement proposal, there is no need for the contractor to appeal that decision back to the contracting officer by submitting a new claim. *Id.* at 1545. However, the "termination settlement proposal must [still] be certified in accordance with the CDA." *Id.*; *see also Dev. & Evolution Constr. Co.*, ASBCA No. 58342, 13-1 BCA ¶ 35,453 at 173,859 (termination settlement proposal exceeding $100,000 must be certified to ripen into a claim).

Whether the submissions were initially termination settlement proposals that converted to a claim upon issuance of the COFD, or a claim, or both, as noted above, a defect in the certification could be corrected prior to a final decision by the Board. 41 U.S.C. § 7103(b)(3). Contrary to the government's arguments, the preprinted certification on the SF 1437 is substantially similar to the certification language required by the CDA. In fact, we have held before that the certification language on an SF 1435, which is identical to the certification on the SF 1437, is a "correctable" certification. *Green Dream Grp.*, ASBCA No. 57413, 11-1 BCA ¶ 34,739 at 171,025; *see also Western Plains Disposal*, ASBCA No. 56986, 11-1 BCA ¶ 34,617 at 170,613 ("[The] 'Certificate of Current Cost or Pricing Data' was a defective but correctable CDA certification."); *Dual, Inc.*, ASBCA No. 53827, 04-2 BCA ¶ 32,636 at 161,492 (appellant's termination settlement proposal which included SF 1435 and SF 1437 with pre-printed certifications, was considered a certified claim once an impasse was reached).

The real issue is whether there was an execution of the certification as required by the CDA. *See* 41 U.S.C. § 7103(b)(1)&(2) (requiring execution of certification by an authorized individual). We have stated before that "to 'execute' a CDA certification requires that the certifier sign the certification document." *Hawaii Cyberspace*, ASBCA No. 54065, 04-1 BCA ¶ 32,455 at 160,535. The FAR defines the term signature or signed as "the discrete, verifiable symbol of an individual that, when affixed to a writing with the knowledge and consent of the individual, indicates a present intention to authenticate the writing." FAR 2.101.

The Board has previously "conclude[d] that a signature which is verifiable in the sense that it permits a determination of which individual is responsible for the

claim, satisfies the anti-fraud policy objectives which are the reason for the CDA's certification requirement." *Kamaludin Slyman CSC*, ASBCA No. 62006 *et al.*, 20-1 BCA ¶ 37,694 at 183,000. The parties agree that there is a signature on the claim letter. The question presented here is whether a signature by an authorized official on a letter attached to the certification is sufficient to meet the CDA's requirement for execution of the certification.

The Board addressed a similar issue in *Betance Enterprises, Inc.*, where the appellant submitted four claims signed by the company president. *Betance Enters., Inc.*, ASBCA No. 62819 *et al.*, 21-1 BCA ¶ 37,881 at 183,980. Directly above the president's signature on the claim letter was a statement that the required certification, per FAR 52.233-1, was attached as an exhibit. *Id.* The attached exhibit contained the CDA (and FAR) certification language but was left unsigned. *Id.* We held that because appellant failed to sign the certification, as there was no "discrete verifiable mark made with intent to authenticate," the defect could not be corrected, and the Board lacked jurisdiction. *Id.* (quoting *Kamaludin Slyman CSC*, 20-1 BCA ¶ 37,694 at 183,000); *compare with Apex Int'l Mgmt. Servs., Inc.*, ASBCA No. 44647, 93-1 BCA ¶ 25,460 at 126,813 (signature at the end of the claim letter applied to entire letter which contained CDA certification language on different pages of claim).

Likewise, here, there is only the name of the company on the correctable certification; there is no signature, not even the name or identification of the individual for anyone to determine who is responsible. Therefore, pursuant to the FAR, there was no signature as there was no discrete, verifiable symbol of an individual, affixed to a writing, in this case the SF 1437, indicating a present intent to authenticate the SF 1437. *See* FAR 2.101. As the Board has explained: "Although we may have refined the definition of the signature requirement . . . we most certainly did not back away from the critical importance of the certification requirement to deter fraud." *Kamaludin Slyman CSC*, 21-1 BCA ¶ 37,849 at 183,793. Accordingly, we hold that LR has failed to execute a certification of its claim, and this failure results in a defective certification that cannot be corrected. We lack jurisdiction over this claim.

CONCLUSION

The appeal is dismissed for lack of jurisdiction, without prejudice.

Dated: July 19, 2023

LAURA EYESTER
Administrative Judge
Armed Services Board
(Signatures continued)                              of Contract Appeals

6

I concur                                          I concur


_____          _____
RICHARD SHACKLEFORD                    OWEN C. WILSON
Administrative Judge                           Administrative Judge
Acting Chairman                                 Vice Chairman
Armed Services Board                          Armed Services Board
of Contract Appeals                             of Contract Appeals


       I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63458, Appeal of LR General Solutions, LLC, rendered in conformance with the Board's Charter.

       Dated:  July 19, 2023


_____
PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals