ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Case Healthcare Solutions, Inc. d/b/a | ) ASBCA No. 63051 |
| Case HCS of Reston, Virginia | ) |
| | ) |
| Under Contract No. W81K00-18-P-0639 | ) |

APPEARANCE FOR THE APPELLANT: Jason Blindauer, Esq.
    Blindauer Law PLLC
    Washington, DC

APPEARANCES FOR THE GOVERNMENT: Dana J. Chase, Esq.
    Army Chief Trial Attorney
    MAJ Joshua B. Fix, JA
    Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WILSON ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION OR, ALTERNATIVELY, TO STRIKE COUNT II OF APPELLANT'S COMPLAINT

This appeal involves a contract for Case Healthcare Solutions, Inc. (Case HCS) to provide insurance billing support to the U.S. Army Medical Command (MEDCOM or Army). In Count I of its complaint, Case HCS seeks to recover $821,835.38 from the Army in allegedly unpaid fees. The Army moves to dismiss this appeal for lack of jurisdiction, arguing that Case HCS did not properly submit a claim pursuant to the requirements of the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, and the Federal Acquisition Regulation (FAR). Alternatively, the Army moves to strike Count II of Case HCS's complaint—which seeks common law damages to compensate for the Army's failure to pay these fees in a timely manner—on the grounds that it raises a new theory of recovery relying on different operative facts from those presented in Case HCS's initial claim. We deny the Army's motions.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. On September 19, 2018, the Army awarded Contract No. W81K00-18-P-0639 to Case HCS to provide insurance billing/collections support for MEDCOM (R4, tab 1). The contract incorporated FAR 52.212-4 CONTRACT TERMS AND CONDITIONS-COMMERCIAL ITEMS (JAN 2017) (R4, tab 1 at 5).

2. The contract required Case HCS to perform third-party billing and collection services in support of military treatment facilities (MTFs). As stated in the

performance work statement, MTFs are required to collect payment for medical services rendered to authorized non-Active-Duty Department of Defense (DoD) beneficiaries (as well as non-DoD beneficiaries) who have other health insurance coverage. Case HCS was to ensure that "medical claims are filed followed up on, collected and posted" into the relevant DoD billing system. (R4, tab 1 at 33) Case HCS's performance fee was 16% of the amount collected stemming from its billing and collection efforts. Under Contract Line Item 0001, "[p]ayment will only be made on a percentage of claims collected." (R4, tab 1 at 3)

3. The contract incorporated by reference the following clauses: FAR 52.233-1 DISPUTES, which defines a claim as "a written demand or one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract" (R4, tab 1 at 8); and Defense Federal Acquisition Regulation Supplement (DFARS) 252.232-7003, ELECTRONIC SUBMISSION OF PAYMENT REQUESTS AND RECEIVING REPORTS (JUN 2012), which provides:

> (b) Except as provided in paragraph (c) of this clause, the Contractor shall submit payment requests and receiving reports using WAWF [Wide Area Workflow], in one of the following electronic formats that WAWF accepts: Electronic Data Interchange, Secure File Transfer Protocol, or World Wide Web input. Information regarding WAWF is available on the Internet at https://wawf.eb.mil/.

> (c) The Contractor may submit a payment request and receiving report using [methods] other than WAWF only when—

> (1) The Contracting Officer administering the contract for payment has determined, in writing, that electronic submission would be unduly burdensome to the Contractor. In such cases, the Contractor shall include a copy of the Contracting Officer's determination with each request for payment;

> (2) DoD makes payment for commercial transportation services provided under a Government rate tender or a contract for transportation services using a DoD–approved electronic third party payment system or other exempted vendor payment/invoicing system (e.g., PowerTrack, Transportation Financial Management System, and Cargo and Billing System);

(3) DoD makes payment for rendered health care services using the TRICARE Encounter Data System (TEDS) as the electronic format; or

(4) When the Governmentwide commercial purchase card is used as the method of payment, only submission of the receiving report in electronic form is required.

(d) The Contractor shall submit any non-electronic payment requests using the method or methods specified in Section G of the contract.

(e) In addition to the requirements of this clause, the Contractor shall meet the requirements of the appropriate payment clauses in this contract when submitting payment requests.

(R4, tab 1 at 7)

4. During the contract's performance period, Case HCS reported billing medical claims totaling $22,157,582.86 (compl. ¶ 36). Of that amount, $15,267,209.48 in billed claims were resolved, resulting in $11,381,035.02 collected by the Army (compl. ¶ 37). Case HCS's performance fee was calculated based on the amount of $11,381,035.02, resulting in invoiced compensation of $1,821,721.45 (R4, tab 4 at 1).

5. The contract's performance period ended on September 24, 2019 (R4, tab 1 at 4). At that time, there remained $6,890,373.38 in medical bills which Case HCS billed but was not collected prior to the expiration of the contract period (R4, tab 4 at 2).

6. On December 9, 2019, Case HCS submitted a certified claim to the Army's contracting officer (CO) requesting an adjustment to the contract in the amount of $821,835.38. The letter specifically reads in pertinent part: "[Case-HCS] would like to respectfully file a *Claim* per FAR 33 Subpart 33.2 [DISPUTES] for adjustments to the above referenced Contract." Case HCS added further: "at the end of the allowed performance period, Case-HCS has been unable to collect performance-fee on Medical Claims processed and [b]illed and acknowledged by the government during the allowed period of performance, but for which no payment has been [c]ollected, as of September 24, 2019." (R4, tab 4 at 1-3)

7. To calculate the sum certain requested in its December 9, 2019 claim, Case HCS applied its average collection percentage of 74.55% against the $6,890,373.38 it alleged was never collected, arriving at $5,136,471.13 (compl. ¶ 43).

Case HCS then applied its 16% fee to this amount, arriving at its claimed sum certain of $821,835.38 (*id.* ¶ 44).

8. Case HCS did not attempt to submit an invoice to the Army prior to filing its December 9, 2019 claim, as the contract only allowed invoicing on monies collected (*see* compl. ¶¶ 37-44, 79).

9. The Army's CO never issued a final decision (COFD) regarding Case HCS's December 9, 2019 claim (gov't mot. ¶ 12; app. resp. ¶ 10). In fact, on January 11, 2021, Case HCS reached out to the MEDCOM contracting specialist to ascertain the status of its submittal in pertinent part:

> It has now been one year and one month since we initially filed. The last time we spoke the claim was being reviewed by legal, has there been any resolutions since then?. . .Please let me know where we stand on this claim.

MEDCOM responded a few days later that nothing had changed from its previous response to an earlier inquiry:

> The current recommended response is the same as the 29 Sep 20 recommended response because the audit is still being performed on the contract and COVID-19 travel restrictions and other COVID-19 complications are still significantly delaying completion of the audit. There is still no estimated completion date for the audit.

(App. reply, ex. B)

10. On September 29, 2021, nearly two years since its claim submission, Case HCS appealed the CO's deemed denial of its claim to the Board. Included in the transmission was its complaint, which alleged the following grounds for relief:

> Count I – Government non-payment of the fees due ($821,835.38), including the Government's improper withholding of payment; and

> Count II -Government breach of contract, common law damages stemming from the failure to pay Case HCS the $821,835.38 in unpaid fees for a prolonged time.

(*See* compl. ¶¶ 75-92, 94-105)

11. In lieu of an answer, the government filed the instant motion. It is undisputed that there were communications between Case HCS and the CO after the submittal of the claim. In fact, the government states in its motion "The CO informed the appellant that the Army Audit Agency was conducting an audit and a final decision could not be issued until the audit is complete." (Gov't mot. ¶ 12) Based on the limited record, we find that the submittal was a non-routine request for payment pursuant to the Disputes provisions of the FAR and that Case HCS requested a final decision. To date, MEDCOM has not made any decision on the submittal.

## DECISION

*The Parties' Contentions*

The Army contends that Case HCS's claim fails to meet the CDA's requirements because it was a routine request for payment submitted when a dispute was not pre-existing, and thus no claim has accrued (gov't mot. at 1, 6; gov't reply at 1). The Army additionally moves to strike Count II of Case HCS's complaint on the grounds that it fails to state a valid claim, alleging that Count II is based upon a different set of operative facts from Count I that took place after Case HCS's claim was submitted to the CO (gov't mot. at 1; gov't reply at 1-2). Case HCS contends that its claim was not a routine request for payment because the Army terminated Case HCS's access to the WAWF system that the contract required it to use in order to submit an invoice (app. resp. at 8-10). Case HCS also argues that Count II of its complaint is based on the same set of operative facts as Count I—its unpaid December 9, 2019 claim (*id.* at 16; compl. ¶ 22).

*Standard of Review*

Before the Board can determine whether Case HCS's appeal can proceed, we must first establish jurisdiction. *CiyaSoft Corp.*, ASBCA Nos. 59519, 59913, 18-1 BCA ¶ 37,084 at 180,516 (citing *Hambsch v. United States*, 857 F.2d 763, 764 (Fed. Cir. 1988)). The Board's jurisdictional requirements to hear an appeal cannot be forfeited or waived. *See United States v. Cotton*, 535 U.S. 625, 630 (2002). As the proponent of the Board's jurisdiction, Case HCS bears the burden of establishing jurisdiction by a preponderance of the evidence. *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816. Case HCS cannot "rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction." *Tetra Tech EC, Inc.*, ASBCA Nos. 62449, 62450, 21-1 BCA ¶ 37,900 at 184,054.

*Case HCS Submitted a Valid Claim Pursuant to the CDA's Requirements*

Section 7103(a) of the CDA provides that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the [CO] for a

decision." 41 U.S.C. § 7103(a). The Federal Circuit has ruled that in order for the Board to have jurisdiction under the CDA, the contractor must submit a proper claim including (1) adequate notice of the basis and amount of the claim and (2) a request for a final decision. *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996). Because the CDA does not define the term "claim," we look to the FAR for a definition. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995); *H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1564-65 (Fed. Cir. 1995). The FAR defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." FAR 2.101; *see also M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010).

The Army relies on *Parsons Glob. Servs., Inc. v. McHugh*, 677 F.3d 1166, 1170 (Fed. Cir. 2012), to support its contention that Case HCS's submittal was a routine request for payment because it did not submit an invoice prior to filing its purported claim to the CO, and as such the "claim" had not yet accrued (gov't mot. at 8). The distinction between a routine and a non-routine request for payment is factual and dependent on the circumstances from which the request arose. *Parsons,* 677 F.3d at 1170. A routine request for payment is one incurred and submitted "in accordance with the expected or scheduled progression of contract performance." *Id.*; *Ellett*, 93 F.3d at 1542. Routine requests are "made under the contract, not outside it" and include invoices, vouchers, progress payments, and other requests for costs under the terms of the contract. *Parsons*, 677 F.3d at 1170; *Reflectone*, 60 F.3d at 1577. Conversely, non-routine requests are those "seeking compensation because of unforeseen or unintended circumstances." *Parsons*, 677 F.3d at 1170; *Ellett*, 93 F.3d at 1543.

If a request for payment is non-routine, all that is required for it to constitute a claim under the CDA is that it be "(1) a written demand, (2) seeking, as a matter of right, (3) the payment of money in a sum certain." *Reflectone*, 60 F.3d at 1575-76. There can be no dispute that Case HCS's December 9, 2019 request was a written demand that sought as a matter of right the payment of money in a sum certain—the $821,835.38 it alleged it was owed under the contract (SOF ¶¶ 5-7).

In *Parsons*, a prime contractor appealed the Army's denial of a subcontractor's passthrough claim for payment for work performed pursuant to a contract for design-build work in Iraq after the contract was terminated. *Parsons*, 677 F.3d at 1168. A Defense Contract Audit Agency audit determined that the subcontractor was entitled to invoice costs at a higher markup rate than the rate initially paid by the prime contractor and included in the termination settlement proposal. *Id.* at 1168-69. The prime contractor submitted a certified claim for the difference between the original costs and the costs billed at the revised markup, which

6

was denied. *Id.* at 1169. The prime contractor appealed this COFD to the Board, which dismissed the appeal for lack of jurisdiction on the grounds that the prime contractor had failed to submit a valid claim. *Id.*; *Parsons Glob. Servs., Inc.*, ASBCA No. 56731, 11-1 BCA ¶ 34,632 at 170,648. The Federal Circuit affirmed, finding that the prime contractor's request for payment was routine because there was no evidence that the prime contractor could not have invoiced for these costs, despite the prime contractor's argument that the request was made two years after the contract was terminated. *Parsons*, 677 F.3d at 1171-72. Since the CO had never received a proper request for payment prior to submission of the claim, such as a voucher, the Federal Circuit reasoned that there was no pre-existing dispute, and thus the Board lacked jurisdiction. *Id.* at 1172-73.

Here, the facts in the instant appeal are distinguishable from those in *Parsons*. We found that the request for payment was non-routine (SOF ¶ 11) as Case HCS could not submit a proper invoice for the claimed amounts under the contract because it could only invoice for monies collected (SOF ¶¶ 2, 8). The claim was submitted to capture its collection fees on amounts billed but not collected prior to the expiration of the contract (SOF ¶ 6). In determining whether a contractor has submitted a claim, the Board applies a "common sense analysis on a case-by-case basis, examining the totality of the correspondence between the parties." *Rover Constr. Co.*, ASBCA No. 60703, 17-1 BCA ¶ 36,682 at 178,614-5; *CCIE & Co.*, ASBCA No. 58355, 14-1 BCA ¶ 35,700 at 174,817. The limited record* here demonstrates that Case HCS, upon expiration of the contract, submitted a properly certified non-routine request for payment under the Disputes clause to the CO for a decision (SOF ¶ 6); made an attempt to get a resolution of its claim for over nearly two years, to no avail (SOF ¶ 9); and after waiting nearly two years for a final decision, appealed to the Board (SOF ¶ 10). Based on the totality of the circumstances underlying this appeal, we conclude that appellant submitted a properly certified claim to the CO for a final decision pursuant to the Disputes clause of the contract. As noted above, the contract only allowed invoicing on monies collected (SOF ¶ 8). The fact that Case HCS could have submitted an invoice outside of the WAWF in accordance with the DFARS electronic payment clause does not change our conclusion. Accordingly, we have jurisdiction over the appeal on a deemed denial basis.

---

* The Board stayed proceedings after these pending motions filed and allowed the Army to submit a limited Rule 4 file consisting of "at a minimum, a copy of the contract and all communications, including attachments, between appellant and the government relevant to the issue of the Board's jurisdiction over this appeal."

*Count II of Case HCS's Complaint*

Count II of Case HCS's complaint seeks common law damages for the Army's alleged breach of the contract by failing to pay the amount in question owed to Case HCS (compl. ¶¶ 21-24). The Army moves to strike Count II on the grounds that it fails to state a valid claim, alleging that it was never submitted to a CO and is based upon a different set of operative facts from Count I that took place after Case HCS's claim was submitted (gov't mot. at 1; gov't reply at 1-2). Case HCS asserts that Counts I and II stem from the same set of operative facts—its unpaid December 9, 2019 claim (app. resp. at 16; compl. ¶ 22). We agree.

For jurisdictional purposes, our consideration must include determining if the issues are based on a common or related set of operative facts. *See Kiewit Infrastructure West Co. v. United States*, 972 F.3d 1322, 1328 (Fed. Cir. 2020); *Placeway Constr. Corp.*, 920 F.2d at 907. A key to the inquiry is whether the same or related evidence will determine the outcome. *Placeway Constr. Corp.*, 920 F.2d at 907. In making these determinations, we consider more than just the face of the claims but the totality of the circumstances. *See K-Con Bldg. Sys. v. United States*, 778 F.3d 1000, 1006 (Fed. Cir. 2015); *Fid. & Deposit Co. of Md.*, ASBCA No. 63278, 23-1 BCA ¶ 38,341 at 186,179. Here, Count II clearly stems from the same operative facts: government non-payment of Case HCS's claim, albeit for a prolonged period of time (SOF ¶ 10). To require Case HCS to re-submit this issue to the CO seems nonsensical at best, given the fact that the current record shows that the CO has not issued a decision on the December 9, 2019 claim, or any further correspondence of substance as of the date of this decision (SOF ¶ 11). Accordingly, the government's arguments must fail.

CONCLUSION

The government's motions are denied. The stay in proceedings is lifted and the Army shall file its Answer and a complete Rule 4 file within 30 days of the date of this decision.

Dated: June 13, 2024

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

(Signatures continued)

8

I concur                                                     I concur

_Michael N. O'Connell_ (signature)                           _D B Stinson_ (signature)
MICHAEL N. O'CONNELL                                         DAVID B. STINSON
Administrative Judge                                         Administrative Judge
Vice Chairman                                                Armed Services Board
Armed Services Board                                         of Contract Appeals
of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA No. 63051, Appeal of
Case Healthcare Solutions, Inc. d/b/a Case HCS of Reston, Virginia, rendered in
conformance with the Board's Charter.

Dated:  June 13, 2024

_Paulla K. Gates-Lewis_ (signature)
PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

9