ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -                              )
                                         )
Sayar Development Inc.                    )        ASBCA Nos. 63871, 63894
                                         )                    64191, 64227
                                         )
Under Contract No. W90U42-11-P-2062      )

APPEARANCE FOR THE APPELLANT:             Mr. Shamsullah Sayar
                                            CEO/President

APPEARANCES FOR THE GOVERNMENT:           Dana J. Chase, Esq.
                                            Army Chief Trial Attorney
                                          CPT Sana H. Daniell, JA
                                            Trial Attorney

<u>OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS ON THE
GOVERNMENT'S MOTION TO DISMISS, AND IN THE ALTERNATIVE FOR
SUMMARY JUDGMENT</u>

Appellant, Sayar Development Inc. (appellant or SDI) asserts that respondent, the United States Army (government or Army) failed to pay invoices on a contract awarded in 2011 (ASBCA No. 63871); failed to meet the minimum guaranteed contract amount on a second contract awarded in 2010 (ASBCA No. 63894); complains of a negative Contractor Performance Appraisal Report (CPAR) on the 2011 contract (ASBCA No. 64191); and seeks to overturn the termination for default of the 2011 contract (ASBCA No. 64227).  Appellant's amended complaint additionally asserts the existence of various government misconduct and procedural failures, and immigration and civil rights violations.  Appellant's multiple sur-replies allege innumerable frivolous and irrelevant issues.

The government moves to dismiss the appeals for failure to state a claim because appellant did not first submit its claims to the contracting officer (CO) for a final decision.  In the alternative, the government seeks dismissal because appellant's claims are barred by the six-year statute of limitations, or summary judgment because appellant executed a release of claims on the contracts.  For the reasons stated below, we grant the government's motion to dismiss in part and deny the motion for summary judgment.

STATEMENT OF FACTS FOR PURPOSES OF THE
GOVERNMENT'S MOTION TO DISMISS

On January 22, 2010, the Army Regional Contracting Center (RCC) – Sharana issued Solicitation No. W90U42-10-R-002 for an indefinite delivery, indefinite quantity (IDIQ) contract for material handling equipment (dkt. 6, consol. compl. at 13 ¶ 1;[1] app. supp. R4 D-2006 Contract, tab 1[2] at 1). The government awarded contract No. W90U42-10-D-2006 to appellant on February 13, 2010 (dkt. 6, consol. compl. at 13 ¶ 2; app. supp. R4 D-2006 Contract, tab 3 at 1). The contract had a minimum contract value of $600,000 for all IDIQs combined, and a maximum contract value of $9,000,000 for all IDIQs combined (dkt. 6, consol. compl. at 13 ¶ 2; app. supp. R4 D-2006 Contract, tab 3 at 16). The contract was a multiple-award contract, (app. supp. R4 D-2006 Contract, tab 3 at 37); however appellant asserts that it is a single-award contract (dkt. 6, consol. compl. at 13 ¶ 2). At least one other company was awarded task orders on the contract, totaling about $5 million (dkt. 6, consol. compl. at 3).[3] On February 6, 2011, the government exercised option year 1 of the contract (*id.* at 13 ¶ 5). The government only ordered $400,000 from SDI and the remaining money was diverted without appellant's consent to unknown third parties (dkt. 88, formal compl. at 1). Appellant seeks $1,388,000 comprised of $188,000 as the difference between the minimum order amount and the IDIQs issued to appellant for the base year of the contract, plus the $600,000 minimum order amount for both option years (dkt. 6, consol. compl. at 3). Appellant seeks the minimum order guarantee for the second option year, but does not allege that the second option year was awarded.

On May 25, 2011, the Army RCC – Sharana awarded Contract No. W90U42-11-P-2062 (P-2062 contract) to appellant (*id.* at 6 ¶ 3; app. supp. R4 P-2062 Contract, tab 4). The contract was for a 12-month lease of material handling equipment, without operators (dkt. 6, consol. compl. at 6 ¶ 3; app. supp. R4 P-2062 Contract, tab 4 at 3-4).

---

[1] Appellant has submitted and resubmitted an incomprehensible jumble of documents that defy accurate citation. Some documents exist in different versions bearing the same date. Several of appellant's submissions contain multiple attachments, and some attachments have been submitted multiple times. In an attempt to accurately identify the documents, we cite the board's docket number entries and a description of the document.

[2] Appellant's supplemental appendix is organized by contract, with both appendices beginning with Tab 1.

[3] We assume the truth of Sayar's pleading that this was a single award contract for the purpose of the motion to dismiss; however, we note that his assertion that another company was awarded $5 million in task orders demonstrates that the government satisfied the minimum ordering requirement for a multiple award contract, and would entitle the government to summary judgment.

The period of performance was originally June 5, 2011 to June 4, 2012, but the start date was changed to June 30, 2011 by contract Modification No. P0001 (dkt. 6, consol. compl. at 6 ¶¶ 3, 6; app. supp. R4 P-2062 Contract, tab 7 at 3-4).

On January 17, 2012, the government terminated the contract for default (dkt. 6, consol. compl. at 6 ¶ 8). At the time of termination, the appellant had been paid for its invoices 1-5; however, invoices 6-8 were outstanding (*id.*). The termination notice stated that appellant failed to provide equipment in good working condition (app. supp. R4 P-2062 Contract, tab 11 at 1). According to the termination notice, between October 5, 2011 and December 30, 2011, the forklifts were down for 132 days (*id.*). In addition, the contract required that the equipment be repaired or replaced within 48 hours of notice, but the equipment was inoperable for an average of eight days per equipment failure (*id.*).

Appellant asserts that the government failed to pay $54,000 of the $118,200 contract value (dkt. 88, formal compl. at 1). Appellant asserts that following contract termination, on January 21, 2012, the CO fraudulently promised appellant that it would be paid all outstanding invoice amounts if appellant signed a release of claims (dkt. 6, consol. compl. at 8 ¶ 19). On January 22, 2012, the government incorrectly calculated deductions from the outstanding invoices nos. 6-8 (*id.* at 8 ¶ 20). That same day, appellant sent an email stating that a release of claims was attached; however, no release is attached to the document in the record (app. supp. R4 P-2062 Contract, tab 16 at 1).

On January 23, 2012, appellant sent an email to Ms. Emy M. Winkler, the CO who signed the termination for default, including a document captioned as invoice 9 and seeking $41,166.19 (app. supp. R4 P-2062 Contract, tab 15-1). The invoice amount was calculated as the difference between the $84,200 remaining contract amount from box 14 in the termination notice, and the $43,033.81 sum of the contract amounts for Contract Line Item Numbers (CLINs) 0001 and 0002 in the Summary for the Payment Office in the termination for default. Invoice 9 further provided that appellant is "Asking for Decision of CO to be Final about Contract and Process of our Performed work Invoices" (*id.*). Appellant resubmitted the same document with a date of August 1, 2012, to Ms. Brenda Simmons, who was identified as USA RCC Services CO, in the email (app. supp. R4 Contract P-2062, tab 21).

The government submitted appellant's invoices 6-8, for payment on January 24, 2012; however, the government did not pay the invoices because the budget was terminated (dkt. 6, consol. compl. at 8 ¶ 22). On July 31, 2012, the government requested that appellant resubmit its invoices (*id.* at 8 ¶ 23). On August 29, 2012, the government apologized for the delay in payment due to the fact that the government needed to request funds for a previous contract year (*id.* at 8 ¶ 24). The government

3

still has not paid appellant for invoices nos. 6-8 (*id.* at 1). Appellant asserts entitlement to $54,000 for the unpaid invoices (dkt 88, formal compl. at 2).

Appellant additionally asserts that the CO issued a negative Contractor Performance Assessment Reporting System (CPARS) rating without notifying appellant or providing an opportunity to respond (dkt. 88, formal compl. at 1). Appellant only became aware of the negative CPARS rating after suffering significant harm, including disqualification from U.S. government contracts, termination of Indefinite Delivery Indefinite Quantity (IDIQ) task orders, reputational harm, denial of a Special Immigrant Visa (SIV) for former employees, and the suicide of a former employee, Mr. Yousef (*id.*). Appellant additionally alleges various examples of government misconduct and procedural failures, including the CO misleading appellant and abandoning their post without due process; failure to provide notice of appeal rights and limitations periods; denial of access to the CO; issuance of unilateral contract modifications; and concealing CPARS records (*id.*).

Appellant seeks an order for the removal or correction of the CPARS evaluations; that the Board refer this matter to the Office of the Inspector General (OIG) for investigation and potential disciplinary action; and that the Board encourage ADR resolution of the appeal (*id.* at 2).

In a motion dated July 7, 2025, appellant sought to "void termination for cause based on government misconduct, bad faith, and abuse of discretion" (dkt. 95, final unified legal package at 7). As appellant had not previously sought to overturn the termination for default, this motion was docketed as a separate appeal, ASBCA No. 64227. Appellant asserts that it voluntarily performed free maintenance and repairs for the government during the lease period, but the government damaged the leased equipment through misuse (*id.*). The government refused to repair the equipment and wrongfully terminated the contract for cause, falsely alleging that appellant failed to perform maintenance (*id.*). The contracting officer operated in bad faith and with intent to injure appellant in violation of the Federal Acquisition Regulation (FAR) (*id.*).

DECISION ON GOVERNMENT'S MOTION TO DISMISS

I.     Standard of Review

Appellant bears the burden of proving the Board's subject matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *United Healthcare Partners, Inc.*, ASBCA No. 58123, 13-1 BCA ¶ 35,277 at 173,156. Pursuant to the CDA 41 U.S.C. §§ 7101-09, a contractor may, "within 90 days from the date of receipt of a CO's decision" under 41 U.S.C. § 7103 appeal the decision to an agency board. 41 U.S.C. § 7104(a). Our reviewing

4

court, the United States Court of Appeals for the Federal Circuit, has held that CDA jurisdiction requires "both a valid claim and a contracting officer's final decision on that claim." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)).

II.     Dismissal For Failure To Submit Claims to the Contracting Officer

The government moves to dismiss appellant's claims for lack of subject matter jurisdiction because appellant failed to submit its claims to the CO for a final decision (gov't mot. at 9-11). As the government notes, it is well established that a claim must first be submitted to the CO for a final decision and be the subject of a CO's final decision or a deemed denial of the contractor's claim. *See, e.g.,* 41 U.S.C. § 7103(a)(1) ("Each claim by a contractor against the Federal Government relating to a contract shall be submitted to the CO for a decision"); *M. Maropakis Carpentry*, 609 F.3d at 1327.

Appellant has filed an exceptional number of sur-replies (*e.g.*, dkt. nos. 51, 53-59, 62, 67-68, 70, 78, 82, 86, 91, 94-95, 98-99, 101-11).[4] Appellant's filings raising a myriad of issues not relevant to the government's jurisdictional motion. For example, appellant alleges violations of the Anti-Deficiency Act, the Prompt Payment Act, the ASBCA Charter, entitlement to equitable tolling, the existence of coercion and bad faith (dkt. 102, Supplemental Jurisdictional Response at 3-4), Fifth Amendment takings, and other matters not relevant to the government's jurisdictional motion (app. resp. at 4). Many of these allegations, such as the allegation of a Fifth Amendment takings raise issues beyond the Board's jurisdiction. We have reviewed all of appellant's submissions. The submissions are largely cumulative and we find nothing in the submissions to be new information, not discussed in appellant's response brief, that is relevant to the jurisdictional issues raised in the government's motion to dismiss. Appellant nowhere states in its multiple sur-replies that it submitted any of these claims to the CO, other than the January 23, 2012 submission discussed above.[5] Appellant's outstanding motions, including motions for sanctions, and referral to various investigative agencies, are denied.

We grant the government's motion with regard to ASBCA No. 63894 (failure to order the minimum quantities on the D-2006 contract), and ASBCA No. 64191

---

[4] By Order dated August 1, 2025, the Board instructed the Recorder to return unread any additional submissions by appellant, pending issuance of this decision. Despite that statement, we have reviewed appellant's submissions after August 1, 2025, and find them irrelevant to the issues decided in this opinion.

[5] The Chairman has denied appellant's request that these appeals be referred to the Board's Senior Deciding Group.

(CPAR rating, misconduct, immigration and civil rights violations).[6] Appellant does not allege that it presented these claims to a contracting officer for decision, and we see no evidence of a claim submission in the record. The government's termination of the P-2062 contract is government claim, and thus, appellant was not required to present the claim to the contracting officer, and the government's motion does not apply.

However, we deny the government's motion with regard to ASBCA No. 63871 (unpaid contract amounts on the P-2062 contract). Here the record contains appellant's request, to a CO, for a written final decision, in a sum certain amount (app. supp. R4 P-2062 Contract, tab 15-1 at 1; tab 21 at 1). The amount claimed, $41,166.19 does not require certification. In addition, the document, captioned invoice 9, is not a routine request for payment. Thus, we find that the submissions constitute claims.

The government contends that invoice 9 is not a claim because 1) the document asks for a final decision rather than demanding a final decision; 2) the document is a voucher, invoice or other routine request for payment, 3) appellant failed to provide written notice to convert the invoice into a claim; 4) the document was not the correct invoice for processing; 5) appellant admits that it did not submit a claim; and finally, 6) the government suggests that the document appears to have been altered (gov't reply at 5-7 n.3).

The government's first argument, that there was no written demand or written assertion because appellant "is merely 'asking' for the contracting officer's decision" (gov't reply at 6 (citing FAR 2.101)) is without merit. Appellant is clearly asking for a final decision when stating "Asking for Decision of CO to be Final about Contract and Process of our Performed work Invoices" (app. supp. R4, contract P-2062, tab 15-1). "Ask" is merely a synonym of demand. In fact, our sister board has referenced a contractor's requirement, pursuant to the CDA, to "ask" for a final decision. *1-A Constr. & Fire, LLP v. Dept. of Agriculture*, CBCA No. 2693, 15-1 BCA ¶ 35,913 at 175,564 ("the contractor is required to submit the written demand seeking a decision 'to the CO,' and ask him to issue a decision." (internal citations omitted)). Moreover, we note that a claim may implicitly request a final decision if it satisfies the elements of claim. *Zafer Constr. Co. v. United States*, 40 F.4th 1365, 1367-68 (Fed. Cir. 2022). Thus, appellant's use of the word "ask" rather than "demand" is irrelevant, even before providing additional leeway to a non-native English speaking *pro-se* appellant.

---

[6] We note that the Board would lack subject matter jurisdiction to entertain appellant's immigration and civil rights violations even if they were presented to a contracting officer.

The government's next argument, that the document is a "voucher, invoice, or other routine request for payment that is not in dispute" similarly fails (gov't reply at 6). Although the document is captioned as an invoice, it seeks payment of the residual contract amount based on the contract modification terminating the contract for default. An invoice billing the contract price for items delivered or services provided is not a claim. *Guy W. Parker d/b/a Parker Int'l*, ASBCA No. 56742, 09-2 BCA ¶ 34,260 at 169,282-83, *aff'd*, 379 Fed. Appx. 980 (Fed. Cir. 2010)). However, appellant's document is not based on the provision of goods or services, but rather based on the termination for default of the contract, which is obviously not a routine submission. The government's argument that appellant failed to provide written notice that it was converting it routine request for payment into a claim is moot given our finding that the document was not a routine request for payment, and constituted a claim.

The government's next argument, that invoice 9 was not the correct invoice for processing, and that appellant admits it did not submit a claim, points to inconsistencies in appellant's arguments. The government cites appellant's statement that its notice of appeal and complaint is its claim (gov't reply at 6-7). Thus, according to the government, appellant is admitting that invoice 9 is not its claim, and appellant's complaint seeking payment of invoices 6-8 is a different claim than appellant's request for payment of invoice 9 (*id.*). However, appellant refers to invoice 9 as a claim (dkt. 102, Supplemental Jurisdictional Response at 8). As the document is seeking payment for funds on the terminated contract, we consider it to be claim seeking at least some of the funds alleged in appellant's complaint.

Finally, the government asserts that invoice 9 "appears to have been altered" (gov't reply at 5 n.3). Appellant submitted the document in its Rule 4 supplement on June 15, 2024 (dkt. 23), and apparently resubmitted the documents on June 21, 2024 (dkt. 30). The government has not filed an objection to invoice 9, contained in appellant's supplemental Rule four for contract P-2062 at tabs 15-1 and 21, as permitted by Board Rule 4(d). Thus, invoice 9 is part of the record for this appeal. If the government wishes to challenge the Board's jurisdiction based on the authenticity of invoice 9, it needs to do so in an evidentiary hearing. A suggestion that the document "appears" to be altered made in a footnote to a reply brief is not sufficient to challenge the authenticity of a document admitted to the record.

III. <u>Dismissal For Failure to Comply With the Six Year Statute of Limitations, And Failure To Timely Challenge The Termination for Default</u>

The government also seeks dismissal because appellant did not file its claims within six years of accrual (gov't mot. at 12-17), or challenge the termination for

default within 90 days (gov't reply at 7-8). The claim accrual dates and filing deadlines vary for appellant's different claims, so we address the claims separately.

The government asserts that appellant's claim for contract P-2026 (ASBCA No. 63871) accrued on January 22, 2012 (gov't mot. at 14). Thus, appellant's claim (app. supp. R4 P-2062 Contract, tab 15-1) dated the next day, January 23, 2012 is clearly within the six-year statute of limitations. Appellant's resubmission of the claim on August 1, 2012 was also timely. Accordingly, we conclude that Board is not barred from entertaining appellant's appeal and deny the government's motion to dismiss for failure to comply with the statute of limitations for ASBCA No. 63871.

The same claim accrual date, January 22, 2012 (the date of the termination for default), applies to appellant's challenge to the termination for default in ASBCA No. 64227. The deadline to appeal to the Board a CO's final decision, such as a termination for default, is 90 days. 41 U.S.C. § 7104(a); *Cosmic Constr. Co. v. United States*, 697 F.2d 1389, 1390-91 (Fed. Cir. 1982). Appellant did not file an appeal of the termination for default until July 2025. That date is more than 13 years after the appeals period expired. Thus, appellant did not timely file a notice of appeal. Unlike the six-year statute of limitations to bring a claim, the 90-day statute of limitations to file a notice of appeal is jurisdictional and is not subject to equitable tolling. *See, e.g.*, *Kandahar Mahali Transit & Forwarding Ltd.*, ASBCA No. 62319, 24-1 BCA ¶ 38,526 at 187,281.

We have already dismissed appellant's claims in ASBCA Nos. 63894 and 64191 and need not address them further.

<u>STATEMENT OF FACTS FOR PURPOSES OF THE
GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT</u>

The P-2062 contract, identified above, as issued, had two contract line items (CLIN). CLIN 0001 was for the rental of three 4K Bobcat forklifts and CLIN 0002 provided for the rental of a 6K forklift, for a total price of $108,000 (gov't mot., ex. G-6 at 3). On June 22, 2011, the Army issued Modification No. P0001 which added CLIN 0003 for missing forks for the bobcat and CLIN 0004 provided for transportation costs to FOB Sharana (gov't mot., ex. G-7 at 1-2). The modification increased the contract amount to $118,200 (*id.* at 3).

On August 22, 2011, the government paid voucher 197333 in the amount of $20,519.10 (R4, tab 1 at 1). On August 30, 2011, the government paid voucher 191267 in the amount of $9,601.62 (R4, tab 2 at 1). On November 9, 2011, the government paid voucher 197881 in the amount of $8,903.90 (R4, tab 3 at 1). On December 12, 2011, the government paid voucher 197795 in the amount of $9,339.92

(R4, tab 4 at 1). On January 11, 2012, the government paid voucher 197264 in the amount of $7,723.23 (R4, tab 5 at 1). The five vouchers totaled $56,087.87.

The January 17, 2012, termination for default indicated in box 14 that "the total funded amount for this contract was decreased by $34,200 from $118,200 to $84,200" (gov't mot., ex. G-11 at 1). This statement is mathematically incorrect— either the contract decrease should be $34,000 or the remaining contract funding should be $84,000. [7] However, the "Summary for the Payment Office" on the following page contains an entirely different calculation, providing that "total funded amount for this document [sic] was decreased by $64,966.19 from $118,200 to $53,233.81"[8] (*id.* at 2). The summary continued by indicating that CLIN 0001 was reduced to $28,033.81 and CLIN 0002 was reduced to $15,000 (*id.*).

On January 22, 2012 appellant sent an email to the government stating "Sir: You have to know the writed [sic] amount need some correction bu [sic] what can ido [sic] , please give advise [sic]. Here is the Signed Claim Relies [sic] Letter," (gov't mot., ex. G 15 at 1). As noted above, the document provided by appellant does not include the release of claims that was appellant indicated was attached. The government includes with its motion a version of the same email with a copy of the release of claims document. Despite that statement in appellant's email that a signed claim release was attached, the document included with the government's motion is unsigned (*id.* at 2).

DECISION ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

I.    Standard of Review

We will grant summary judgment only if there is "no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Mingus*

---

[7] We note that the $84,200 amount was calculated from the total contract funding of $118,200 including CLINs 0001 through 0004, but that the $43,033.81 only includes CLIN 0001 and 0002. CLINs 0003 and 0004 totaled $10,200, yielding the $53,233.81 amount contained in the modification's summary for the payment office.

[8] We note that the termination purports to reduce the contract amount to less than the amount of the invoices already paid ($53,233.81 versus $56,087.87 already paid).

9

*Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984). "A genuine issue of material fact arises when the nonmovant presents sufficient evidence upon which a reasonable fact finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant." *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993) (citation omitted).

II.     Material Factual Issues Prevent Entry of Summary Judgment

As noted above, we denied the government's motion to dismiss ASBCA No. 63871, so we now turn to the government's motion for summary judgment on that appeal. Because we dismissed ASBCA Nos. 63894, 64191, and 64227 for lack of jurisdiction, we do not address the government's motion for summary judgment on those appeals.

The government contends that it is entitled to summary judgment because appellant executed a release of claims for the P-2062 contract (gov't mot. at 21-24). As the government notes, a contractor is generally barred from asserting any claims not excepted from a release if it has executed a general release at contract completion (gov't mot. at 21 (citing *J.G. Watts Constr. Co. v. United States*, 161 Ct. Cl. 801, 805 (1963); *Inland Empire Builders, Inc. v. United States*, 424 F.2d 1370 (Ct. Cl. 1970), and *Colo. River Materials, Inc. d/b/a/ NAC Constr.*, ASBCA No. 57751, 13-1 BCA ¶ 35,233 at 172,991). However, pursuant to the standard of review, which requires that we view the facts in the light most favorable to the non-moving party, we determine that there is a material factual dispute as to whether appellant released its claim. As noted above, the record does not contain a signed copy of the release (gov't mot., tab G-15 at 1). The email communication in the record states that appellant had attached a signed release, and appellant does not dispute that it executed a release, but there is no indication in the record that the draft release is what appellant, in fact, executed. Accordingly, we deny the government's motion for summary judgment with regard to ASBCA No. 63871.

CONCLUSION

For the reasons stated above, we grant the government's motion to dismiss with regard to ASBCA Nos. 63894, 64191, and 64227. We deny the government's motion to dismiss and, in the alternative motion for summary judgment, with regard to ASBCA No. 63871. The government is directed to file its answer to those portions of appellant's April 29, 2024 complaint surviving these motions, within 30 days of the date of this opinion. The stay of discovery in ASBCA No. 63871 is lifted.

Dated: August 6, 2025

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63871, 63894, 64191, 64227, Appeals of Sayar Development Inc., rendered in conformance with the Board's Charter.

Dated: August 6, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals